**U. S. COLLOID MILL CORPORATION v. MYERS et al.**

District Court, S. D. New York.
Feb. 16, 1934.

284

Henry J. Lucke, of New York City, for plaintiff.

Albert P. Wollheim, of New York City, for defendant Myers.

Austin & Dix, of New York City (Howard W. Dix, of New York City, of counsel), for defendant Dix.

CAFFEY, District Judge.

For convenience I shall refer to the so-called inventions mentioned in the applications described in paragraph 8 of the bill of complaint as if they were inventions in fact, although I shall not determine in this case whether they are inventions or not. That question is not before me.

As I have previously indicated to counsel, this is a contract suit. The primary issues are to determine whether or not the inventions, or any of them, come within the contract of June 15, 1928, between the plaintiff and Mr. Myers, and whether in other respects there has been proof entitling the plaintiff to recover in so far as concerns one or more of the inventions. We are not concerned now with the long line of cases, the most recent of which, so far as I know, being United States v. Dubilier Condenser Corporation, 289 U. S. 178, 53 S. Ct. 554, 77 L. Ed. 1114, 85 A. L. R. 1488, having to do with rights as between employers and employees.

Here, I repeat, we have plainly an unvarnished contract suit. It is not, however, an ordinary contract suit. As was within the rights of the plaintiff, it brought a contract suit of an extraordinary type. The plaintiff asks for specific performance. That removes the case somewhat beyond the rules for the determination of an ordinary action at law for breach of contract, wherein recovery of damages is sought.

The suit being for specific performance, and being of a type which confessedly the plaintiff had a right to resort to, by resorting to it the plaintiff subjected itself to rules which are peculiar to, but thoroughly settled in, that class of actions. Those rules are well stated in Dalzell v. Dueber Watch Case Manufacturing Company, 149 U. S. 315, 13 S. Ct. 886, 37 L. Ed. 749, to which I shall refer later. In substance, the rules are, first, that in order for the plaintiff to recover in an action for specific performance, there must be clarity of meaning of the contract and of the right on which the plaintiff relies growing out of the contract; secondly, the proof on any issues of fact must be clear and satisfactory.

I realize that in a suit like the present, wherein because under the law certain of the documents are inaccessible to it, the plaintiff is at a certain disadvantage in establishing its contentions with respect to the facts. There are documents in the hands of counsel for an applicant for a patent which it is the duty of counsel, or in the files at the patent office which it is the duty of the patent office, to keep secret until the issuance of a patent or other final disposition of the application. That is matter of law. Moreover, the provision of law to this effect rests on a sound basis. But for the preservation of such secrecy, the right of the applicant might be impaired or even lost. Nevertheless, whatever may be the embarrassment of the plaintiff in making proof of facts, the plaintiff has elected to pursue the remedy here invoked. The plaintiff chose the way which is hard. Furthermore, irrespective of who made the election, the applicable rules of law must be obeyed by the court, as well as by litigants. The consequence is that the plaintiff, first, must establish a clear right to the thing for which it asks, and, secondly, by clear and

satisfactory evidence must show the facts, which may be essential to maintenance of the suit, to be what it contends them to be.

The questions as they affect the two defendants are somewhat different. I shall, therefore, take them up separately. I shall deal first with the case as between the plaintiff and the defendant Myers.

The proof establishes that application No. 304,335 covers the identical formula which was the principal subject-matter of the contract of June 15, 1928; and in mentioning the word contract, unless otherwise indicated, I shall have in mind that instrument. Indeed, it is conceded of record that this particular application embraces the invention dealt with in the contract.

As I have indicated heretofore, in conducting this trial, I am bound by the previous decision of Judge Mack.[1] The obligation is well expressed in the Commercial Union Case (C. C. A.) 10 F.(2d) 937, to which I have previously directed the attention of counsel. But for the very frank, and I think proper, statement by counsel for Mr. Myers, probably, by being forced to obey the law of the case, I should be precluded from passing on the question of whether or not the plaintiff is entitled to the invention covered by the contract. However, the defendant Myers agrees that I may take up the question of the relative rights of the parties in so far as the chemical features of the application are involved, regardless of the order of Judge Mack and dispose of it on the merits as I conceive them to be.

The contract, as I construe it, conferred on the plaintiff unambiguous rights to the invention of the dispersing agent referred to or described in the contract and disclosed to the plaintiff at the time the contract was signed. It follows that the plaintiff is entitled to recover that invention, in so far as concerns the chemical formula relating to the dispersing agent dealt with in that formula, unless there exist an obstacle or obstacles arising out of some other ground.

Two reasons have been urged as to why, even though all that I have said with respect to this invention be admitted, the plaintiff nevertheless is not entitled to recover.

First, it is insisted that, in advance of suit, Mr. Myers demanded an accounting by the plaintiff and the accounting was not furnished. Why the plaintiff did not furnish the accounting has not been suggested.

---

[1] No opinion filed.

The contract obligates the plaintiff to keep correct accounts of transactions under the contract and to make quarterly statements to and settlements with Mr. Myers. However, on the evidence, it would have been purely academic for the plaintiff to have rendered a statement on the facts as they have been established at the trial; namely, that nothing ever happened to be accounted for. No use was made of the invention, much less was there a sale of any product growing out of the transaction. It would seem to me, therefore, that it would have been so wholly useless to render an accounting that failure to render it does not afford basis of sufficient substance to create a defense to this suit.

The second ground assigned on behalf of Mr. Myers, as a reason why there should not be a recovery, is that the application for the invention embraced not alone a dispersing agent, and the particular dispersing agent dealt with in the contract, but, in addition, embraced certain mechanisms or mechanical features. Is that good ground for denying relief to the plaintiff, in so far as concerns the chemical features? Or is it good ground for completely denying relief to the plaintiff, whatever form the relief might take? Is it enough to disentitle the plaintiff to enjoyment of the fruits of the application as an entirety?

The question is novel. To my mind it is also perplexing. In so far as I have had experience or have discovered, it raises an issue which has never been authoritatively determined by the courts. In New Jersey Zinc Co. v. Singmaster (D. C.) 4 F. Supp. 967, I had before me a somewhat similar question; but there the contract was differently worded. That case is now working its way up to the Court of Appeals. I cannot be sure what the appellate court will do about it. It seems to me, however, that, sitting as a court of equity, in order to solve the difficulty, I am under the obligation, as nearly as I can, to apply equitable principles.

The choice as to what should be included in the application was made by Mr. Myers. The choice as to what was to go into the application was not made by the plaintiff; nor, so far as the proof discloses, was the matter of what should be covered by the application considered, or at any rate very much considered, by the plaintiff. Apparently from the proof the controversies which existed at the time the application was filed had run off on to other phases of the subject.

If the plaintiff was entitled to the chemical features and Mr. Myers applied for a

patent which covered not alone the chemical features, but something else, and, for the sake of the argument, for the moment I shall assume anything else that he might make up his mind to put in, it would seem to me that nevertheless the course of action by Mr. Myers should not have the effect of depriving the plaintiff of any right whatsoever which it already had to the chemical features; that is to say, any right which it had in the invention covered by the contract. On the contrary, inclusion of phases of invention additional to those covered by the contract having been the act of applicant for the patent, the applicant must take the consequences.

The most nearly applicable principle, as it seems to me, which can be employed by a court of equity is the well-established doctrine as to commingling of goods, or, as it is sometimes referred to, confusion of goods. This doctrine is well stated in The Idaho, 93 U. S. 575, 23 L. Ed. 978.

It is argued on behalf of Mr. Myers that the court should scrutinize the application and make a separation of chemical from mechanical features.

In the first place, I see no duty on the part of the court to do this. The confusion results exclusively from the act of Mr. Myers. In the second place, having examined the documents, I find it is impossible equitably to separate into the two elements.

Again, when we get into the field of strict patent law itself, it seems to me there is some support there for the conclusion at which I have arrived on this point in the well-established rule that where a basic patent has been granted to one person and an improvement patent is later granted to another person, the holder of the improvement patent can make no real use of it without the consent of the owner of the basic patent. See the statement of the proposition in Temco v. Apco, 275 U. S. 319, 328, 48 S. Ct. 170, 72 L. Ed. 298.

In the application with which we are dealing there is a combination of something which belongs to the plaintiff with something which is mechanical. The application is not confined to and does not consist exclusively of a dispersing agent. When the specifications and claims are construed together, as they must be construed, it is manifest that the applicant had in mind employing a dispersing agent, in a certain way as described in the application, by means that he there sets forth. But taking the analogy I have referred to as between the owner of a basic patent and the owner of an improvement patent, it being the law, as I understand it, that the owner of the improvement patent, although he have complete title to it, cannot use it without the consent of the owner of the basic patent, it seems to me that, having in the application brought in something which he was free not to bring in, but nevertheless by his own act did bring in, Mr. Myers put himself in a position where there is no help for him. The mechanical features cannot be preserved to him, separate and apart from the rights of the plaintiff so far as concerns the dispersing agent feature. There is no effective way of assuring to the plaintiff the enjoyment of what indisputably is its property, in its own right, unless what has been inextricably commingled with it also go to the plaintiff. It may be that this disposition will interfere with something which otherwise, and but for its inclusion in the application, Mr. Myers may have been himself entitled to. That follows, however, solely from his own fault or mistake.

Only one thing, therefore, is left for the court to do. This is to treat the application as an entirety and to award it to the plaintiff.

What about the other dispersing agent application and the patent issued thereon? The application is No. 304,336 and the patent is No. 1,774,609.

Let us turn to the contract.

The first thing to be observed about the contract, which deals with a dispersing agent for reducing matter to a colloidal condition, is that Mr. Myers therein represents to the plaintiff that the formula covering the dispersing agent is the "only one" developed or owned by him. In other words, by the recital of the contract itself, it was made the basis of the agreement, as between Mr. Myers and the plaintiff, that the dispersing agent which was covered by a secret formula embraced everything Mr. Myers had invented with respect to the employment of a dispersing agent in reducing matter to a colloidal condition.

Here were two people who were contracting, with knowledge on the part of one as to what was the subject of the negotiations and complete ignorance on the part of the other as to exactly what was included. The plaintiff of necessity was put into position of buying a pig in a poke. The recital, therefore, was of the utmost consequence. So also now it is of the utmost consequence in the interpretation of the contract.

The contract with frequency refers to the formula which was represented in the opening recital to be the only invention with respect to dispersing agents for reducing matter to colloidal condition. The formula is likewise

frequently referred to as the invention. The contract specifically provides that, contemporaneously with its signing, a considerable sum shall be paid to the seller. It next provides that then, for the first time, "the formula and method or methods of practicing the invention" shall be disclosed to the purchaser. It also provides for the payment of an additional amount arising out of "royalties or sales price from manufacturers for the use of this formula" and thereafter for an equal division between the parties of "further royalties."

The contract goes even further in the phase of it which deals with the subject of compensation. It discriminates between the invention referred to in the opening paragraph as a formula, and new formulas having to do with the employment of chemicals as dispersing agents. The new formulas are to become the property of the purchaser. There is no arrangement for a cash payment or any unconditional payment for these. For them the seller is to get only a share of "any royalties received from manufacturers employing" them. The effect, therefore, is further to emphasize that when the contract was entered into Mr. Myers had made but a single invention relating to a dispersing agent for reducing matter to a colloidal condition.

For the sake of the argument, however, let it be assumed that at the time of the signing of the contract Mr. Myers had not conceived the invention embraced in patent 1,774,609. Is there any other provision in the contract under which the plaintiff is entitled to it?

The contract contains another, and wholly separate, clause defining the rights of the parties with respect to inventions. This has been discussed a great deal in argument. It obligated Mr. Myers at all times to work in the interests of the plaintiff. It also obligated him to make prompt and full disclosure of all formulas presently in his possession, thus going back to and being correlated to the expression used in the opening recital of the contract, and, in addition, future formulas or inventions or improvements thereon.

Assuming, therefore, that the invention covered by the patent was conceived by Mr. Myers after the contract was signed, the issue arises as to what kind of future inventions were covered by the contract which, by its terms, Mr. Myers obligated himself to transfer to the plaintiff.

In describing such future inventions the contract employs these words: "Any future formulas, inventions, or improvements upon, any formula or invention, whether patentable or otherwise, in, upon, or pertaining to dispersing agents, or in means for obtaining colloidal substances."

It is clearly established that the chemical invention described in the patent we are now discussing did relate to dispersing agents for use in obtaining colloidal substances. In consequence, if it was in fact conceived by Mr. Myers subsequent to the making of the contract, nevertheless, by express terms of the contract, it was included in what by the contract he obligated himself to transfer to the plaintiff.

It may be argued that the obligation with respect to an inventive conception, or to an invention conceived, subsequent to the making of the contract, only covered such things as he conceived, and which constituted invention or were of an inventive nature, prior to the termination of his association with the plant of the plaintiff on Long Island. I am inclined to think that this is true. Contracts whereby one man sells products of his mind to somebody else are to be rather strictly construed. Otherwise we should run into the difficulty of a man mortgaging his own mind, a thing which is to be avoided. Otherwise also we should run into the difficulty of hampering the development of inventions. The Supreme Court in the line of cases to which I have referred, coming right down to the Dubilier Condenser Case, has frequently issued warnings to the courts with care to protect the rights of any individual to the enjoyment of the fruits of his own mind.

Assuming now, first, that at the time of signing the contract Mr. Myers had not already proceeded with the subject-matter of the application and patent, or at least of the chemical features of it, to the extent of its having reached the point of invention; and, secondly, what is practically the same thing, that the conception of the invention on the part of Mr. Myers was something which, within the meaning of the phrase used in the contract, was "future," then let us inquire whether the proof establishes that the invention was conceived during the period that Mr. Myers was at the plant of the plaintiff and during which the contract certainly obligated him to do inventive work in the interests of the plaintiff pertaining to dispersing agents for obtaining colloidal substances.

The application is dated September 6, 1928. Its verification is dated September 5, 1928. Mr. Dix rendered bills, Exhibit 6, as of the dates of July 31 and August 31, 1928. These were for his then current services as patent counsel. On their face I am impressed that the phraseology is not wholly free from ambiguity with respect to whether the serv-

ices included the particular chemical feature mentioned in the application and the patent. On the other hand, there is nothing to the contrary in the bills. Indeed from their phraseology alone I think it probable that they must be interpreted as showing that the services of Mr. Dix were in part on this particular invention.

Let us now examine the proof. Let us see if it removes the doubt, if doubt there be, as to the date of invention.

The period of activity of Mr. Myers at the plaintiff's Long Island plant clearly ran to the end of August; almost certainly into September. From this fact alone, I think the inference is inescapable that if this invention was, in the sense of the contract, the result of "future" work of Mr. Myers, it was made while he was engaged at the plaintiff's plant.

There is another method of approach which, as it seems to me, has some bearing upon the interpretation both of the contract and of the acts of the parties as they affect the particular invention.

Mr. Myers is compelled to take one or the other of two positions in regard to the contract rights of the plaintiff in the invention, at least as to its chemical features. He is in a dilemma. He is forced to concede that the invention either antedated the contract or came into existence while he was in the employment of the plaintiff, the date of the application itself showing that the invention was complete before he quit the plaintiff's employment. In either event, the invention belongs to the plaintiff. This is so because at the making of the contract he said to the plaintiff, in substance, "I am disclosing to you everything I know on the subject of the employment of dispersing agents," and the contract conferred on the plaintiff ownership of inventions of Mr. Myers on the subject while in its employ. Accordingly, under the express terms of the contract, it seems plain to me that the plaintiff is entitled to the invention in so far as concerns the chemical features. At the moment I am not dealing with the mechanical features.

Again, let us examine the patent itself.

In order to construe a patent as issued, we must consider both the specifications and the claims; we must consider them together. There are numerous recitals in the specifications which impress me as meaning that the invention embraced a dispersing agent for the accomplishment of the purpose covered by the contract. The words in the contract are, "pertaining to dispersing agents." What the patent covers not only pertains to dispersing agents, but is a dispersing agent. There are numerous examples of this in the patent itself. A few only need to be cited.

Thus in the specifications, page 1, beginning at line 45, are these words: "Yet another object of this invention is the provision of the use of an improved colloidizing agent of a chemical nature used with any suitable mechanical means." So on page 1, beginning at line 49, are these words: "Yet another object of this invention is the combination of the improved colloidizing agent with improved mechanical means."

It is necessarily implied by the language used that one of the elements of the invention is employment of a chemical colloidizing agent. Numerous other illustrations could be given from the specifications.

Turn now to the claims. Four in specific terms include sulphite waste liquor; the fifth includes sulphite liquor. In other words, every claim calls for the employment of a chemical dispersing agent. And the claims call for use of the dispersing agent for the purpose of producing or assisting in the production of colloidal substances.

It seems to me, therefore, on the face of the document itself, so far established that the subject-matter of the patent, as affects the chemical features, is linked into the use of a dispersing agent for obtaining colloidal substances, that the invention comes squarely, 100 per cent., within the contract.

In addition, the same argument can be made as to this second invention which I have already stated with respect to the first invention, covered by application No. 304,335. I need not repeat it. Here it is plain that the applicant for the patent had in mind the use of certain mechanical means. He made clear in the specifications, as he made clear in the claims, however, that there was to be combination of chemical features and mechanical features. I may be wrong in applying one or the other of the two analogies I have invoked; but it seems to me that by the action of Mr. Myers in bringing into his own application something which, for the sake of the argument, we may concede for the moment the plaintiff would not be entitled to and combining that with something to which the plaintiff is entitled, and combining it in such a way that no court can separate them, the title to the whole passed to the plaintiff, precisely as the title to mingled goods passes to the true owner of a part where the wrongful mixer puts into and confuses with the mass something of his own.

As I see it, therefore, the plaintiff is entitled to recover patent No. 1,774,609.

All of the other inventions are mechanical. So far as concerns the inventive nature of what is described in the applications covering the inventions, there is no novelty whatsoever that has any bearing on dispersing agents. On the contrary, they are exclusively mechanical. All stand on the same ground. I shall not take up all. I shall, however, specifically discuss the one which has occupied a considerable part of the time at this trial. This is described in application No. 301,804. Is the plaintiff entitled to that? I think not.

[9] First, as affects this invention, the plaintiff has not established the element of futurity, invention after the contract was made. On the contrary, the proof is very persuasive that the device on which a patent was asked by application No. 301,804 had ripened into invention prior to the contract. It is not necessary, however, for me to go that far in order to determine the issue. All that is essential, and of the truth of that I am convinced, is that the plaintiff has failed to show that the invention was made by Mr. Myers before the contract was executed; namely, has not shown it was made on or subsequent to June 15, 1928. We might stop there and consider the issue disposed of; but there are other grounds which lead to the same conclusion in favor of Mr. Myers.

At the threshold we should look at the contract and get it clearly in mind before going to features of the proof other than the mere matter of date of invention.

When the instrument of June 15, 1928, is read in its entirety, it is perfectly manifest that it was designed to deal with dispersing agents. It does not mention, certainly in specific terms, any mechanical means. There was no mention of flexible rotors. Yet it is apparent from the testimony that flexible rotors were well known at the time the contract was made. The very absence from the contract of the expression "flexible rotors" goes far to persuade me that the parties did not have them in their minds when they entered into the contract.

As I have so often pointed out, the obligation of Mr. Myers was to disclose his existing formula and to make prompt disclosure of future formulas; and, by express language, those formulas and the associated word "inventions," which brings in the inventions, were to pertain to dispersing agents. Those are features of the contract which are not to be overlooked in our effort to ascertain its meaning.

True, the clause mentioning future inventions pertaining to dispersing agents contains another expression. This follows the words "dispersing agents." This expression is the only thing in the contract on which the plaintiff bases any claim to the mechanical inventions. The plaintiff predicates its entire case, so far as concerns mechanical inventions, on this expression. It, therefore, deserves very careful scrutiny.

Let us see if it really covers mechanical inventions.

The contract obligates Mr. Myers to disclose formulas or inventions "in, upon, or pertaining to dispersing agents, or in means for obtaining colloidal substances." It is argued by the plaintiff that the use of the word "means" brought into the contract mechanical inventions, if they be employed for obtaining, or in the process of obtaining, colloidal substances, just as fully and completely as there were brought into the contract, by the language throughout, inventions having to do with the employment of dispersing agents in obtaining colloidal substances.

As I read the contract, however, it is almost beyond the imagination that a lawyer drawing it, having in mind the necessity of precision in expressing a fair arrangement between two laymen, so that they should understand it, would ever have thought that, by the use of the word "means," mechanical inventions, in addition to or as distinguished from chemical inventions, would be included. The proof shows that the instrument was prepared by a member of the bar well known to the court. It may be properly assumed that his purpose was to state what the parties had agreed on and to state it in such way that neither party would have a misconception of the subject-matter it embraced. Without the use of an unambiguous term to make clear to the contracting parties that what they were dealing with included mechanical inventions as well as chemical inventions, I think, in the circumstances, it would be little less than absurd to hold that mechanical inventions were included. To construe the contract as embracing a sale of mechanical inventions, as intended to transfer title to existing mechanical inventions, would, as it seems to me, carry the word "means" so far beyond what would be its ordinary significance that I totally reject the notion that the contract can be interpreted to include mechanical inventions.

Still another thing is to be observed. The word "means" is preceded by the word "in." It is related back to what precedes. By the relation a reasonable interpretation is that

the purpose was to cover only what pertained to dispersing agents. There is, in consequence, a natural field of operation for the word "means" without attributing to it the significance of describing, or ascribing to the draftsman the purpose by its use to embrace, mechanical inventions. As I see it, the object of inserting the added phraseology was to make sure completely to cover all types of improvements in inventions pertaining to the employment of dispersing agents. That is as I read the contract and that I believe is its meaning.

■ I have heretofore referred to the Dalzell Case, 149 U. S. 315, 13 S. Ct. 886, 37 L. Ed. 749. As I pointed out to you, the Supreme Court there held that when a plaintiff elects to pursue the remedy of specific performance, not alone does he take over the burden of establishing his cause of action by clear and satisfactory evidence, but also lays down the rule that in the interpretation of the contract itself it must be clear to a man of common understanding that it was the purpose of the contract to include the particular thing which the plaintiff seeks to have the court award to him.

In the Dalzell Case, at page 326 of 149 U. S., 13 S. Ct. 886, 890, quoting from a prior decision (Colson v. Thompson, 2 Wheat. 336, 4 L. Ed. 253) of the Supreme Court, it was said:

· "The contract which is sought to be specifically executed ought not only to be proved, but the terms of it should be so precise as that neither party could reasonably misunderstand them."

Can you conceive that, when the two parties read over the contract now under examination, it was not reasonably possible for either of them to understand that mechanical inventions were not included? Consider the length of the arguments to which counsel have resorted at this trial in trying to persuade the court that the use of the single word "means" necessarily brought mechanical inventions into the contract. We are to remember that we are concerned with laymen who sat down to sign a contract. They were not lawyers. Bearing that in mind, I certainly cannot say, within the requirement of the rule of law as laid down by the Supreme Court, that it was not reasonable for Mr. Myers to fail to understand that by the contract which he signed on June 15, 1928, he was obligating himself to turn over to the plaintiff every mechanical invention he had made or might make which related to the general subject. On the contrary, I do not think it would be reasonable to say that he did have the idea that, by the

employment of the single word "means," he was assuming an obligation to turn over his mechanical inventions to the plaintiff.

The court proceeds in the Dalzell Case to say:

"If the contract be vague or uncertain, or the evidence to establish it be insufficient, a court of equity will not exercise its extraordinary jurisdiction to enforce it, but will leave the party to his legal remedy."

At best, under the language just quoted, there is no warrant for compelling an assignment of the mechanical inventions to the plaintiff.

There are several other features of the case at bar which confirm me in the conviction that the interpretation I have put on the contract is correct.

In very easily understood terms the contract specified what the plaintiff should pay Mr. Myers for the particular formula or invention dealt with by the contract, the formula which he obligated himself to disclose to the plaintiff upon the signing of the contract. It provided that for this there should be a contemporaneous cash payment and later payments of royalties. It also provided for the consideration, in the shape of royalties, to be paid for new formulas. And what kind of new formulas? Look at the language used. In the paragraph as to new inventions is there a suggestion of any payment for mechanical inventions? What does it say? It obligates Mr. Myers "to work in the further development of this or other chemicals as dispersing agents." It contains no reference to working on any mechanical device. It proceeds: "and any new formulas that he may develop are to become the property" of the plaintiff. That is his obligation. Then the clause takes up the obligation of the plaintiff with respect to the new inventions. What language is employed to express that obligation of the plaintiff? It is this: "any royalties received from manufacturers employing the new formulas" are to be divided between the parties 50-50.

■ One may scan the contract fully; but there will not be found a line or suggestion of an obligation assumed by the plaintiff to pay Mr. Myers a cent for mechanical inventions. Where an inventor sells, his purpose ordinarily is to get something out of the sale. Yet if I should interpret the word "means," in the way insisted on by the plaintiff, to embrace an obligation on the part of Mr. Myers to turn over to the plaintiff all his mechanical inventions, it would mean that he had entered into a contract to make a gift of them to the plaintiff. That would lead to an ab-

surdity. An interpretation which leads to an absurdity is to be rejected.

There are certain other corroborative features which, to my mind, point to the interpretation of the contract, in the way I have construed it, as being correct.

The evidence shows that in August, 1928, there was an experiment at plaintiff's plant of the invention Myers claimed to have made involving flexible rotors. This was participated in or was in the presence of the plaintiff and the defendant. Consider everything the witnesses said as to what happened. Out of the evidence there is not to be derived even a suggestion at the time of the notion on the part of the plaintiff that the mechanical invention was the property of the plaintiff.

When on the stand, Mr. Galvin, Sr., seemed to be under the impression that, by mere force of the relationship, an employer becomes the owner of everything invented by one of his employees. This conception goes far beyond what has been settled by the Supreme Court. There is some popular notion that, so far as concerns inventions, employees sell their brains to their employers; but that is not the law. On the contrary, the Supreme Court has thoroughly established that, while certain shop rights in inventions made by an employee while engaged in the work of his employment may accrue to the employer, no title thereto passes unless there be a plain and unambiguous contract obligation by the employee to turn it over to his employer. Only by such a contract can title to the employee's invention be obtained.

Again, let us pursue the contract between the parties. Mr. Dix presented bills to the plaintiff dated July 31 and August 31, 1928. These were in the hands of the plaintiff approximately on their dates. From them it is manifest that what Mr. Dix had done, as well as what he was doing and was engaged thereafter to do, included services as to mechanical inventions. He was at the plaintiff's plant when the mechanical invention covered by application No. 301,804 was tested. He was available then and at other times to explain to any who were interested. He was working on the whole problem and, so far as appears, no other lawyer participated in the effort to secure the patents. Yet there was no suggestion that anybody ever addressed to him a question as to whether or not the contract conferred on the plaintiff any right to mechanical inventions.

The facts as to the bills go further. When they were presented to the plaintiff, in substance, the plaintiff said, "The bills are none of my business. You cannot charge me. The work was done for Mr. Myers." That is the effect of what all the witnesses say with respect to what transpired between Mr. Dix and the plaintiff on exhibition of the bills.

What else happened?

The plaintiff sat still for three years and eight months without moving a finger. The plaintiff remained quiescent and let Mr. Myers incur liabilities to his lawyer for pursuing the applications in the patent office. For the entire three years and eight months the plaintiff made no claim that it had any rights in or to the mechanical inventions. In view of these circumstances, it would be so unjust to hand over the application or the issued patent to the plaintiff that the court should lean away from doing so, and should not do so, unless forced to.

A court of equity has some discretion as to whether to award specific performance. It has the right to take into account the conduct of the parties in determining the equities. I think that if the plaintiff ever had any basis for claiming title to the mechanical inventions, its conduct shut it off from the remedy of specific performance.

There remain for consideration the two applications Nos. 304,337 and 304,419.

The plaintiff has not seen these applications. I have examined them. It is clear that both are confined to mechanical inventions. For reasons already given, there can be no recovery by the plaintiff as to either invention.

In addition, there is no proof, and, of course, it is hardly conceivable that the plaintiff could make proof, that, within the sense of the contract, either application covered a future invention by the defendant Myers.

What I have said thus far disposes of the controversies on the merits as between the plaintiff and Mr. Myers. What about Mr. Dix?

What is the plain horse sense of this case as it affects Mr. Dix? It is undisputed that he was employed with the knowledge of the plaintiff. He filed the applications. He did the various things recited in his bills. This was at the inception. Since then he has pursued the matter for between five and six years. He took it up originally with the plaintiff. He did this before he had gone very far. The plaintiff replied, "I won't pay you anything. You must look to Mr. Myers."

It was on the basis of what the plaintiff itself stated that Mr. Dix has relied exclusively on Mr. Myers for compensation. On that

basis he accepted as security a transfer by Mr. Myers of a one-tenth interest in all the inventions.

It would be a gross injustice to any man, whether lawyer or layman, after a full disclosure by him of what he was doing, to allow him to suffer, and to leave him remediless, through taking away the subject-matter of his security without providing in some way that he be paid; without prescribing that he be paid as a condition to requiring him to transfer back that on which he relied as a security when he performed services; without attaching as a condition precedent to his execution of the transfer some effective means for his protection.

To the extent, therefore, that Mr. Dix shall be called on by a decree in this case to execute any documents, so as to clear the title of the plaintiff in the patent office to that which belongs to the plaintiff, in advance he must be paid, or arrangements be made to his satisfaction for payment of, fair compensation for the services which he has rendered and the fair amount of his disbursements in that connection. Unless the items be agreed on, there may be a reference to fix them.

This brings us to the final feature of the case. That is the form of the relief to the plaintiff in so far as concerns what I have described as the chemical inventions, with the incidents thereto as I have heretofore explained them.

On behalf of Mr. Myers it is urged that the contract does not obligate him to sign transfers of or to assign applications. If we deal with literal words only, that is true. The duty relating to the procurement of patents on the inventions imposed on Mr. Myers by the instrument was to take several definite steps appropriate to vest in the plaintiff evidence of ownership. That is all. Certain of the specified things to be done by him were executing applications, testifying and furnishing information. The contract does not in express terms say, "When you have signed an application for an invention, you must thereupon also execute an assignment of the application." But it does say that the object is to vest in the plaintiff title to the inventions and to enable it to procure patents covering the inventions. I am inclined to think that the natural meaning of this, even though not stated in definite terms, is that Mr. Myers obligated himself to execute assignments of the applications. Whether that be so or not, however, it is plain beyond peradventure that the purpose was to assure the plaintiff enjoyment of ownership. With that in mind,

in the absence of any contract obligation whatsoever, it is within the province of the court to require the defendant Myers to do all such things as may be essential to the exercise of ownership by the plaintiff.

This means that he should execute and deliver to the plaintiff such appropriate instruments as the plaintiff needs, so as completely to enjoy its ownership of the chemical inventions, with the incidents thereto, and so as completely to do the things in the further prosecution of applications for the patents thereon as it may desire to do in order to procure issuance of the patents. It means further that the documents placed in the hands of the plaintiff, duly executed by Mr. Myers, should be in such form as will enable the plaintiff to put on record in the patent office such evidence of its ownership as may be a warning to the world that the plaintiff is the owner of the inventions.

The decree, therefore, will provide:

First, Mr. Myers shall execute and deliver to the plaintiff assignments of applications Nos. 304,335 and 304,336 and patent No. 1,-774,609, covering the chemical inventions, in suitable form for filing and recording in the patent office.

Second, upon the plaintiff paying to Mr. Dix, or to his satisfaction securing to him payment of, the reasonable value of his services and the reasonable amount of his disbursements in the prosecution of the applications for the chemical inventions, thereupon, in like way, he shall execute and deliver to the plaintiff suitable instruments assigning to the plaintiff the interest he may have in those inventions.

Third, unless there be agreement between the parties with respect to the amount which must be paid to Mr. Dix, or the payment of which to him must be secured to his satisfaction, there shall be a reference to ascertain the sum.

Fourth, the plaintiff has no right, as between itself and the defendants, in or to the mechanical inventions covered by applications Nos. 301,804, 304,337, and 304,419.

Fifth, an injunction, somewhat along the lines of the fourth subdivision of the prayer of the bill, sufficient to render the decree effective, shall issue.

Sixth, unless the parties otherwise agree, there shall be an accounting of any earnings on the chemical inventions which may have accrued to Mr. Myers.

Seventh, no costs shall be recovered.

Settle the decree on five days' notice.