**R. B. JENKINS & CO., Inc. and Card-A-Vac Corporation, Plaintiffs,**

v.

**SOUTHERN SUCTION AND EQUIPMENT COMPANY, John E. Crowley, Jr., Thomas J. Crowley, Lewis H. Parham and Thomas L. Selzer, Defendants.**

**Civ. A. No. 2248.**

United States District Court
W. D. North Carolina,
Charlotte Division.

Feb. 4, 1969.

2. Finding of Fact No. 5, 255 F.Supp. 393, 394.

Clifton T. Hunt, Jr., Hunt & Rhodes, Greensboro, N. C., for plaintiffs.

Ralph Bailey, Bailey & Dority, Greenville, S. C., Charles F. Coira, Jr., Harkey, Faggart, Coira & Fletcher, Charlotte, N. C., for defendants.

## MEMORANDUM OF DECISION

WOODROW WILSON JONES, Chief Judge.

This is an action in which plaintiffs allege that the defendants (1) infringed certain U. S. Letters Patent owned by the plaintiffs, and (2) breached a License Agreement entered into between the parties on April 18, 1966, and amended May 17, 1966. The plaintiffs contend that under the terms of the agreement Card-A-Vac Corporation is the owner of Letters Patent #3,387,336 (hereinafter referred to as '336). Plaintiffs' claim of ownership of this patent is based upon the contention that it constitutes an "improvement" upon the patents belonging to the plaintiffs which were the subject of the License Agreement, and that this "improvement" was designed during the life of said agreement.

Plaintiffs filed Motion for Summary Judgment on May 22, 1968, on the issue of ownership of Patent '336. Defendants moved for Summary Judgment on August 12, 1968. Defendants contend that the invention does not constitute an "improvement" as to come within the contract requiring the assignment to plaintiffs of improvements relating to the subject matter claimed in certain U. S. Patent Applications (which resulted in Patents) for two reasons: (a) The claims of plaintiffs' application do not describe or read upon the defendants' invention, and (b) the defendants' invention could not be used with the suction device of plaintiffs' application.

These Motions were heard by the Court on August 27 and November 20, 1968. The Court has carefully examined the pleadings, exhibits, depositions, affidavits and briefs offered by the parties, and after hearing oral argument of counsel, makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. Card-A-Vac Corporation is engaged in the business of selling suction cleaning equipment for carding machines, and was so engaged prior to March, 1966. Southern Suction and Equipment Corporation was formed in March or April, 1966, and entered into an exclusive licensing agreement with Card-A-Vac Corporation to manufacture and sell the then existing Card-A-Vac suction cleaning equipment for carding machines. Both are North Carolina corporations.

2. The corporate parties entered into an exclusive Licensing Agreement dated

April 18, 1966, and amended May 17, 1966, under which they operated until March, 1967, when it was cancelled by Card-A-Vac. In the agreement, Card-A-Vac represented and warranted that it had the right to grant licenses "relating to certain information, technical know-how and inventions more fully described and claimed in certain pending United States Patent Applications and pertaining to suction cleaning and the control of air currents on carding machines (hereinafter sometimes referred to collectively as LICENSED SUBJECT MATTER)" and that it had "certain rights in the trade-mark CARD-A-VAC for apparatus for cleaning textile machinery, including the right to license its use."

3. Paragraph One of the Agreement granted the defendant, Southern, "the exclusive right to manufacture and sell apparatus for use in suction cleaning and air control of carding machines and utilizing and embodying the LICENSED SUBJECT MATTER, or portions thereof."

4. Paragraph Seven of the Agreement provides, in part: "It is agreed that all unit installations of the LICENSED SUBJECT MATTER sold under this agreement shall include * * * a suction nozzle disposed between the main cylinder and the doffer and arranged to draw in air from beneath the main cylinder substantially as indicated in the drawing attached hereto as Exhibit A and incorporated as a part of this agreement."

5. Paragraph Eight of the Agreement provides, in part, the following: "It is agreed that the LICENSED SUBJECT MATTER is intended to provide for the application of suction at the points illustrated in the drawing of Exhibit A." A copy of the Agreement and Exhibit A is attached as an appendix to plaintiffs' Motion for Summary Judgment filed May 27, 1968.

6. Patent applications relating to certain Card-A-Vac apparatus and methods used for the suction cleaning of carding machines were filed in 1964 and 1965.

Some of these applications matured into patents during the existence of the contract and some since its cancellation. A copy of Patent Application Serial #425,142, the original Card-A-Vac Doffer Plenum, filed January 13, 1965, a copy of Patent Application Serial #494,391, filed October 11, 1965, and a copy of Patent Application Serial #490,279, are filed with the papers in this cause. An improvement entitled DOFFER PLENUM, filed October 17, 1966, by defendant, John E. Crowley, Jr., was assigned to Card-A-Vac Corporation pursuant to the License Agreement and has now matured into Patent Number _____.

7. The reference to the LICENSED SUBJECT MATTER in the contract includes the patent applications as well as Card-A-Vac's know-how and information relative to the suction cleaning of carding machines as illustrated in Exhibit A attached to the contract. The contract was negotiated and executed without specific reference to any particular patent applications but explicit reference was made to Exhibit A which indicates that the parties relied upon said exhibit as the primary designation of the LICENSED SUBJECT MATTER. The amendment dated May 17, 1967, also made explicit reference to Exhibit A and located the points of suction which is the heart of the subject matter of the contract, as designated in Exhibit A.

8. The amendment dated May 17, 1967, also made a significant addition to Paragraph 10. In its original form, Paragraph 10 required the absolute assignment of all improvements relating to the LICENSED SUBJECT MATTER, and read as follows:

"10. It is agreed that any improvements made by SOUTHERN relating to the LICENSED SUBJECT MATTER during the term of this agreement shall become the property of CARD-A-VAC and SOUTHERN agrees to cooperate with CARD-A-VAC in the obtaining of letters patent for any such improvement which in the opinion of CARD-A-VAC shall be patentable. SOUTHERN shall have the

right to use such improvements without additional royalty during the term of this agreement."

The amendment gave the Licensee the right to continue using any assigned improvement even after termination without payment of royalty. The amendment added the following to Paragraph 10:

"SOUTHERN shall have a non-assignable right to continue using the subject matter of any patentable invention made by SOUTHERN during the term of this agreement relating to the LICENSED SUBJECT MATTER and assigned to CARD–A–VAC pursuant to this paragraph without payment of royalty in the event of termination of this agreement."

It is important that this change occurred at the same time the following change was made:

"1. In the first 'WHEREAS' paragraph on page 1, line 6, after 'machines' insert,—such as illustrated in Exhibit A attached hereto and made a part of this agreement—."

The obvious intent of the parties was for Exhibit A to be the gauge for determining where the LICENSED SUBJECT MATTER stopped and the improvements started.

9. The License Agreement conveyed the right to use the trade-mark Card-A-Vac and Southern manufactured and sold card cleaning apparatus under said trade-mark. The agreement also gave Card-A-Vac the right to cancel if it did not approve of the nature and quality of goods manufactured and sold by Southern. Card-A-Vac exercised this power and gave notice of cancellation to Southern in March of 1966.

10. Paragraph Eight of the Agreement reads as follows:

"CARD–A–VAC agrees to defend at its expense and with counsel of its choice any action for patent infringement which may be brought against SOUTHERN, its customers, or CARD–A–VAC because of sales of the LICENSED SUBJECT MATTER as illustrated in Exhibit A. SOUTH-ERN agrees that it will defend and save CARD–A–VAC harmless in any action for patent infringement brought against SOUTHERN, its customers, or CARD–A–VAC because of sales of LICENSED SUBJECT MATTER which include any modification made by SOUTHERN without the written approval of CARD–A–VAC. SOUTHERN shall be relieved from this obligation in the event modifications made by SOUTHERN shall have been approved in writing by CARD–A–VAC prior to any sale."

This language protects Southern against patent infringement so long as it sold what was shown in Exhibit A, but required written approval of any change in order that the change might be included in the indemnification. Southern agreed to save Card-A-Vac harmless in any action for patent infringement which might result from Southern's sales of unapproved modifications to the LICENSED SUBJECT MATTER of Exhibit A. Modifications were made by Southern and approval of Card-A-Vac was sought and obtained as required by this paragraph.

11. The application of suction at the point designated by the "air flow" arrow pointing to the space between the main cylinder C and the doffer D in Exhibit A is that part of the LICENSED SUBJECT MATTER pertinent to the Motions for Summary Judgment. This is recognized by the defendant, Southern in a letter from its President dated May 9, 1966, to plaintiffs' counsel in which he enclosed a detailed drawing of vacuum points on the Card-A-Vac system to be marketed by Southern with a brief description of each vacuum point. This sketch is similar to the sketch shown on Exhibit A. On May 12, 1966, officials of Card-A-Vac and Southern met to discuss the several provisions contained in the License Agreement and agreed that Exhibit A was an important part of the LICENSED SUBJECT MATTER. This is confirmed in a letter of May 17, 1966, from Southern to Card-A-Vac which con-

tained the amendment to the contract, and which reads in part as follows:

"You confirmed at our meeting that you would defend us in any patent infringement action involving the use of suction at the points shown in Exhibit A to the License Agreement * * * "

Shortly thereafter, that is, on May 20, 1966, Card-A-Vac's affiliate, Jenkins Metal Shops, Inc., joined with Southern in instituting an action for declaratory judgment in this Court against Pneumafil Corporation, Civil Action Number 2132, asking for a ruling that the Card-A-Vac suction system as shown in the sketch of Exhibit A to the License Agreement did not infringe any of the claims of Pnuemafil's Griswold Patent #2,683,901.

12. On June 28, 1966, plaintiffs' counsel received new drawings (as shown on Pages 77–80 of the Appendix attached to plaintiffs' Motion for Summary Judgment) from Crowley, Southern's President, reflecting certain proposed changes to the structure shown in Exhibit A, notably an improved doffer plenum, which became the subject of Crowley's '277 Patent Application. (See plaintiffs' Appendix, Page 49).

The suction point indicated at C on the June 28, 1966 drawings is pertinent to the Motions for Summary Judgments. As required by the contract, Card-A-Vac approved the changes to the structure specified in the License Agreement and, in October 1966 plaintiffs' counsel prepared and filed, at plaintiffs' expense, Patent Application Serial #587,277 entitled DOFFER PLENUM for the doffer plenum shown in Crowley's June 28, 1966 sketches and drawings. The oath to the application was executed on October 16, 1966, by Crowley, and immediately thereafter assigned by Crowley to Card-A-Vac in accordance with the agreement. Southern thereafter advertised the doffer plenum of said Crowley's '277 Patent Application under the trade-mark Card-A-Vac and as a part of the Card-A-Vac card cleaning system in two of Southern's brochures, both of which were distributed during the existence of the agreement.

13. On May 8, 1967, after Card-A-Vac served notice to Southern in March 1967 of its intention to cancel the agreement, John E. Crowley, Jr., filed an application for Letters Patent Serial #636,782 entitled TRAY FOR CARDING MACHINE CLEANERS (See Page 1, Appendix of plaintiffs' Motion), which matured into patent #3,387,336 on June 11, 1968. This is the patent which is the subject matter of the Motions for Summary Judgment and is the patent to which Card-A-Vac's motion asserts title. Plaintiffs contend that it is an improvement of the LICENSED SUBJECT MATTER and was developed, designed, and invented during the existence of the contract. Southern exhibited the tray, which forms the subject matter of the patent, as a part of one of its exhibits during the existence of the contract as shown on Pages 64 and 65 of the Appendix attached to plaintiffs' Motion. It shows that the design was in existence prior to the cancellation of the contract.

14. A description of the tray in question appears at page 6 of plaintiffs' Appendix, beginning in line 7; the same description being repeated in Column 2 at line 11 of patent '336, a copy of which is in the record:

"An elongated tray B for receiving waste is positioned below the flats and extends across the main cylinder and the doffer cylinder. Supports C are spaced longitudinally of the tray positioning the tray for guiding waste into the orifice. The tray is spaced from an upper surface of said plenum so as to define an elongated suction orifice D for receiving waste from the upper surface of the plenum. The tray also guards against foreign objects passing over the plenum between the main cylinder and the doffer cylinder. The tray B includes an upper topping guiding surface inclined rear-wardly and downwardly toward the main cylinder for guiding toppings into the orifice, and a lower guard surface inclined forwardly and downwardly from

a lower portion of the upper surface toward the upper surface of said plenum. A downwardly and rearwardly extending guide E is positioned forwardly and adjacent the brush for guiding waste into the tray."

15. The disputed tray, which is shown at B in the Crowley '336 patent is colored red in Figures 1 and 2 of the copy of said patent which is attached to plaintiffs' proposed Findings of Fact; its associated guide E is colored blue, and the Card-A-Vac '277 doffer plenum with which the disputed tray is used, is colored green. There is a striking similarity between the photograph on the first page of Southern's Card-A-Vac brochure of Exhibit D shown on Page 64 of plaintiffs' Appendix and Figure 2 of the Crowley '336 patent, which points up the identity of the tray advertised by Southern during the term of the License Agreement and the tray B in the disputed Patent '336.

16. Reference is made to Crowley's earlier application Serial No. 587,277 in the '336 patent at Column 1, lines 32 and 33. In Column 1, line 33 of the '336 patent it is explained that:

"Such devices perform two important functions, namely: reduce the fly generated at the transfer point by sucking-off air currents generated beneath the main cylinder and the doffer cylinder which result from the differential in their high rates of rotation, and removes such air-borne lint and waste as are generated. It has been found, however, that toppings from the card flats and other waste escape the action of the equipment described above because they do not come within the influence of the rather confined suction area effected by the suction orifice and foreign objects such as hammers, wrenches and other tools slide down the inclined surface of the plenum and fall between the main cylinder and the doffer cylinder causing damage to the card clothing.

"Accordingly, it is an important object of this invention to provide a guide for introducing waste into the effective area of the orifice so that it may be removed by the suction action thereof, and guard against foreign objects falling between the main cylinder and the doffer cylinder.

"Another object of the invention is to provide a guard for guiding toppings and the like into the tray described above so as to be effectively removed by the suction generated by the plenum.

"Another important object of the invention is to provide a means for keeping the plenum itself free from undesirable waste and avoid damage to the card clothing."

17. Beginning in line 12 on page 8 of Card-A-Vac's Crowley '277 application (Page 58, plaintiffs' Appendix) speaking of the structure of the doffer plenum, it is said: "The top wall 28 is sharply inclined as at 40 toward the slot 38 and thus serves to guide lint which may be deposited thereon from the flats or otherwise into the area of slot 38 where it is drawn into the plenum. Auxiliary guide means may be employed for directing waste from the doffer end of the flats into the slot 38 such as a plate extending upwardly from adjacent slot 38 beneath the bight of the flats."

18. The "auxiliary guide means" specifically contemplated in Card-A-Vac's '277 application is the tray B in the disputed '336 patent. There is such an interdependence between the Card-A-Vac '277 doffer plenum and the tray of the '336 patent that the tray is clearly an improvement to the plenum. Defendants' counsel conceded as much at the hearing.

19. The tray, which is the subject of patent '336, is also an improvement to the LICENSED SUBJECT MATTER within the meaning of the License Agreement. Paragraph 10 of said agreement requires that improvements invented during the term of the agreement be assigned to Card-A-Vac. It is apparent from the brochure shown on Page 64 of plaintiffs' Appendix that the tray was

advertised by Southern as a part of the Card-A-Vac system before the agreement was cancelled in March 1967. It is also apparent that the tray was not invented prior to the signing of the contract because its utility is with the '277 doffer plenum which was not invented until after May 9, 1966.

■ The language of Paragraph 10 is explicit when it says: "It is agreed that any improvements made by Southern relating to the LICENSED SUBJECT MATTER during the term of this agreement shall become the property of CARD–A–VAC." This declares the intention of the parties that Card-A-Vac is to become the owner of not only one improvement, but all improvements relating to the LICENSED SUBJECT MATTER, including even improvements to improvements, which relate to the LICENSED SUBJECT MATTER and which are made during the term of the agreement. The parties themselves agree that the '277 doffer plenum relates to the LICENSED SUBJECT MATTER and constituted an improvement within the meaning of Paragraph 10 as evidenced by the exchange of the June 28th drawings and the assignment of the '277 Patent Application to Card-A-Vac. Since the tray described in patent '336 is an improvement to the '277 doffer plenum, the tray therefore qualifies as an improvement to an improvement of the LICENSED SUBJECT MATTER and under the terms of Paragraph 10 of the agreement would be the property of Card-A-Vac.

■ 20. The amendment of May 17, 1966 expressly provided that "Southern shall have a non-assignable right to continue using the subject matter of any patentable invention made by Southern during the term of this agreement relating to the LICENSE SUBJECT MATTER and assigned to Card-A-Vac pursuant to this paragraph without payment of royalty in the event of termination of this agreement." It is clear that while Card-A-Vac is the owner of the tray described in patent '336 and as such is entitled to an assignment of said patent, Southern nevertheless, is entitled to continue using the subject matter of said patent without the payment of any royalty.

■ 21. Defendant contends that the license is a simple patent license and the scope of grant and the consequent scope of defendant's obligation to assign improvements is determined by the scope of the claims in plaintiffs' patent applications pending at the time the license was granted April 18, 1966. The only reference to plaintiffs' patent applications is in the plaintiffs' representation and warranty in the first "Whereas" clause that it did have patent applications relating to the subject matter of the license. The intention of the parties controls as to the meaning of any contract and that intention cannot be determined from any one provision to the exclusion of all the rest.

22. Considering the license agreement, as amended, in its entirety, together with the assignment of the '277 doffer plenum as an improvement, leads inescapably to the conclusion that the parties did not intend for the technical language of the claims to define assignable improvements.

■ 23. Even if the claim language was to be used, there are sufficiently broad claims in Card-A-Vac's application Serial No. 490,279 (Pages 34–48 in plaintiffs' Appendix and its application Serial No. 494,391 (copy attached to plaintiffs' proposed Findings of Fact") to read on the '277 doffer plenum. Claim 6 in Serial No. 490,279 says:

6. A method of controlling blowouts from beneath the main cylinder of a carding machine having a rapidly rotating main cylinder, a front knife plate, and a doffer which comprises the steps of enclosing the area beneath the main cylinder and applying suction across the width of the main cylinder at a point closely adjacent the surface peripheries of the main cylinder and the doffer and between the proximal edge of the doffer bonnet and the transfer point of the web from the cylinder to the doffer whereby air

currents created through rapid rotation of the main cylinder are drawn off before being delivered to the area beneath the main cylinder. (Pages 47 and 48, plaintiffs' Appendix.)

Claims 2 and 5 in the copy of Serial No. 494,391 attached to plaintiffs' proposed Findings of Fact recite:

2. A method of controlling and collecting air currents generated through rotation of the main cylinder of a carding machine and of collecting waste carried thereby, said method comprising the steps of:

(a) arranging suction nozzles to draw off air currents at both sides of the main cylinder thereby minimizing the air pressure beneath the main cylinder; and

(b) enclosing the area beneath the main cylinder.

5. A device for controlling the disposition of waste generated by processing of a textile web on a carding machine having a lickerin, a main cylinder, and a doffer, said device comprising:

(a) suction means arranged to draw off surface air currents generated through rotation of the main cylinder at the nip of the main cylinder and the lickerin;

(b) second suction means arranged to draw off surface air currents generated through rotation of the main cylinder at the nip of the main cylinder and the doffer; and

(c) said first and second suction means cooperating with one another to reduce the air turbulence in the area beneath the main cylinder.

These claims comprehend virtually any use of suction at the doffer side of the main cylinder and certainly the suction provided by the '277 doffer plenum.

24. But it is the unmistakable intention of the parties that the sketch of Exhibit A to the license, rather than the undisclosed patent claims, would be the determining factor as to what was licensed and what was an improvement. This was the obvious interpretation of Crowley in assigning the '277 application without having knowledge of the patent applications. Having acknowledged the '277 doffer plenum to be an assignable improvement, defendants cannot now deny Card-A-Vac title to the patented tray, an admitted improvement to that plenum which was broadly disclosed in the '277 application and therefore obviously invented during the term of the agreement.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and the subject matter under the provisions of 35 U.S.C.A. Section 281 and 28 U.S.C.A. Sections 1338–1400.

2. "The fundamental, basic, primary, ultimate, or paramount question to be determined in the legal construction of all contracts is what the real intention of the parties was. So, it has been said that the purpose, aim, or object of the construction or interpretation of a contract is to ascertain or arrive at, and effectuate, the intention of the parties. To determine the intent of the parties to a contract is a matter of interpretation of the contract; and the purpose of a contract is to express the intention of the parties regarding the subject matter. One who executes a contract must be held to intend whatever, on a proper construction, is found to be the legal effect of its provisions." 17–A C.J.S. Contracts § 295.

The authorities agree unanimously that it is the intention of the parties that governs the construction of any contract, including a contract to assign future inventions. Ellis, Patent Assignments and Licenses, 2d Ed., Page 848, Paragraph 843.

3. The intention of the parties may be gathered from all pertinent

facts and circumstances. It is manifested by their prior course of conduct with respect to their agreement, and the Court pays great attention to the actions of the parties concerned in determining whether or not the assignment should be decreed. Ellis, Patent Assignments and Licenses, 2d Ed., Page 267. Where a party to a contract containing a provision for assignment of future inventions assigns one or more inventions voluntarily and freely before a dispute arises, but thereafter refuses to do so, his prior contemporaneous construction of the contract is regarded as most persuasive of his understanding of the true intent of the contract. In the case of Magnetic Mfg. Co. v. Dings Magnetic Separator Co., 16 F.2d 739, 741 (C.A.7, 1927), the Court said:

"As to whether Bethke agreed to devote any part of his time for the compensation paid him (rather small, it must be admitted) to improving the magnetic separator is the decisive and, we may add, close question in this case. It might well be resolved in appellant's favor, but for the construction which Bethke placed upon his own contract. During his employment, and prior to the invention of the article covered by the patent in suit, Bethke made two other inventions on magnetic separators, to cover which he made two applications for patents. In both instances he promptly, voluntarily, and unhesitatingly assigned the applications to appellee.

But in the third instance, the present case, he was apparently convinced that he had made a much more valuable improvement in magnetic separators, and did not disclose his application for a patent to his employer. Instead, he severed his connection with the company. Shortly thereafter, he and two other employees of appellee company became directors of a competitor, and thereupon he assigned his application for a patent to this competitor.

This action on the part of Bethke speaks louder than the testimony of any witness in the case. It is inconceivable that he would have thus transferred his applications for the patents, if he had not construed his contract of employment to be as appellee's president testified. Such a contemporaneous construction of the contract by Bethke's own action, at a time when there was no occasion to dissimulate, is most persuasive."

4. It is admitted that the defendant, Crowley, voluntarily assigned the '277 doffer plenum application to Card-A-Vac during the agreement and he did so although he claims he had never seen any of Card-A-Vac's patent applications. As in the Magnetic case, it is inconceivable that Crowley would have transferred his patent application if he had not understood the contract as requiring him to do so. This understanding and Crowley's assignment of the '277 patent application are consistent with the ordinary meaning of the simply worded contract. Paragraph 10 as originally written and as later amended required Southern to assign to Card-A-Vac improvements made during the term of the agreement and relating to Card-A-Vac's suction cleaning system as exemplified by Exhibit A to the agreement. In exchange therefor Card-A-Vac was required to protect Southern against charges of infringement during the agreement and to let Southern continue making the subject of any assigned inventions without payment of royalty even after the agreement ends or has been terminated.

5. The recognition in the assigned '277 application of the desirability of a structure for "directing waste from the doffer end of the flats into the suction slot 38" (Page 58 of plaintiffs' Appendix) gives added weight to Card-A-Vac's claim to title to the '336 patent, the claimed structure of which is for the very purpose described. U. S. Colloid Mill Corp. v. Myers et al., 6 F.Supp. 283 (So.D.N.Y.1934).

6. The defendants rely on Briggs v. Diesel Locomotive Filter Corp., 228 F.Supp. 26 (D.C.Ill.1963). However,

this case is distinguishable from the case at bar. The grant-back clause there clearly and unmistakably sounded in the technicalities of patent claim interpretation. There is no reference to any patents or applications in the Card-A-Vac case after the usual representations of the first "Whereas" clause. Instead, the agreement refers repeatedly to the simple sketch of Exhibit A for information about the subject matter of the license. The case at bar is more like Barlow v. United States, 28 U.S.P.Q., 499 (Ct.Cls. 1936) in that Barlow involved a license on pending patent applications instead of issued patents. There a license grant was measured by the specified pending applications rather than by reference to issued patents as in the Briggs case, or to a simple sketch attached as an exhibit to the agreement as in the case at bar. Barlow is pertinent only in its holding (pages 503–505) that an improvement to a pending application is to be determined from the description as well as from the claims. Therefore, the pending patent applications recited generally in the first "Whereas" clause of the Card-A-Vac license agreement are not to be construed as strictly as the patent claims in the Briggs case even if Card-A-Vac and Southern had intended for Card-A-Vac's pending patents to define the grant instead of having agreed that Exhibit A would serve that function.

7. Having partially performed their contractual obligation in the assignment of the '277 doffer plenum, the defendants should be required to complete their bargain by assigning the improvement to that plenum to Card-A-Vac. Card-A-Vac must also honor its part of the contract to let Southern continue making the assigned improvement without the payment of any royalty.

An order in accordance with these Findings and Conclusions will be entered simultaneously herewith granting plaintiffs' Motion for Summary Judgment.