The judgment appealed from is therefore affirmed.

THOMPSON, J., recused.
O'NIELL, C. J., absent, takes no part.

(122 So. 866)

No. 29439.

RICHARD v. CAIN et al.

May 20, 1929.

W. C. Perrault, of Opelousas, for appellant.

Dubuisson, Perrault & Burleigh and John W. Lewis, all of Opelousas, for appellees.

ROGERS, J. Frank Richard, the plaintiff, and his brother, Dr. Gerasime Richard, were the joint owners in the year 1919 of two certain portions of land, known as the "Sibille tract" and the "Garland tract," situated in the parish of St. Landry. On August 11, 1924, they also jointly acquired another parcel of ground, known as the "Haas tract," situated in the same parish.

On August 7, 1920, Dr. Gerasime Richard, acting for himself and as the agent of his brother, Frank Richard, sold for $600 each, partly for cash and partly on terms of credit, two portions of ground, containing thirty arpents each, out of the "Garland tract," one to Louis Lancles and the other to Oscar Lancles and Euclide Willingham. On June 26, 1925, Dr. Gerasime Richard and his brother, Frank Richard, jointly sold the remainder of the "Garland tract," approximately 265 acres, to Eicher-Woodland Lumber Company, Inc., for a cash consideration of $3,000.

Dr. Gerasime Richard died in the early part of the year 1927, and his widow and children were duly recognized and put in possession of his estate in the proportions fixed by law. The present suit was instituted on September 14, 1927, by Frank Richard against the widow and heirs of Dr. Gerasime Richard for the recovery of one-half of the proceeds of the three sales hereinbefore mentioned, together with a further demand, which was settled by compromise before trial and has passed out of the case. The defendants pleaded payment against plaintiff's claim for one-half of the proceeds of the sales of the two thirty-arpent tracts; and interposed an objection to the admission of any evidence to sustain plaintiff's demand for one-half of the proceeds of the sale to the Eicher-Woodland Lumber Company, Inc. The court below maintained the plea and sustained the objection, and, accordingly, dismissed plaintiff's suit. This appeal is from that judgment.

Defendants' plea of payment is based solely on an account appearing in the records of the Planters' Bank & Trust Company, of Opelousas, La. The account was in the name of Frank Richard, the plaintiff, and shows a total deposit, under five separate items, of $1,250 from August 7, 1920, to December 19, 1920, both inclusive. It was admitted on the trial of the case that these deposits were made by Dr. Gerasime Richard in the name of Frank Richard. Defendants argue that plaintiff's withdrawal, from time to time, of the funds so deposited constituted an implied consent to receive the deposits as payments. The soundness of the argument depends, necessarily, on all the facts and circumstances under which the deposits and the withdrawals took place. No admission was made by plaintiff that the deposits were made for his individual account, although nominally appearing as such. He testified that he was never informed that the deposits represented, or were intended to represent, the payment for his share of the purchase price of the two thirty-arpent tracts of land sold by his brother, Dr. Gerasime Richard. His explanation was that the bank account was not his individual account, but was in reality an account of a planting partnership which had existed for many years between his deceased brother and him. The court below rejected this explanation on the testimony of one of the attorneys for the defendants to the effect that, subsequent to the death of Dr. Richard,

the plaintiff had stated in his presence that he was receiving $900 a year as a salary for acting as an overseer for his deceased brother, and that the estate was responsible for his salary for the year 1927. Plaintiff testified he never expected nor claimed any salary until, after his brother's death; that, when he demanded a settlement from the widow and heirs, which was refused, he was told by others that the refusal was based on the contention that he was on a salary as overseer, because the income tax returns of his deceased brother showed that to be the case; that he then took the position, if he was entitled to a salary, it should be paid him, in addition to his interest in the partnership.

Conceding that the record fails to establish the existence of a planting partnership between plaintiff and Dr. Richard, nevertheless it does show that they were engaged in the joint venture of purchasing and clearing lands. In furtherance of their venture, they acquired the Sibille, Garland, and Haas tracts. The account in the name of Frank Richard, plaintiff, in the Planters' Bank & Trust Company, was not opened contemporaneously with the sales of the Garland tract, and for the exclusive purpose of handling the proceeds of those sales. It was in existence long before that. Thus, in the year 1919, Dr. Richard deposited in the account a total of $1,350. In 1920, prior to the date (August 7th) of the execution of the sales of the two thirty-arpent tracts, Dr. Richard deposited, on three separate days, a total of $1,200. The account was continued as an active one until some time during the year 1922, when it was discontinued, and a similar account was opened in the Parish Bank & Trust Company. Under the method of doing business with the latter bank, Dr. Richard not only made all the deposits, but all checks paid and canceled were returned to him. Plaintiff was wholly unknown to the employees of the bank.

On August 7, 1920, which was the date of the sales of the two thirty-arpent tracts, Dr. Richard deposited $250 in the Planters' Bank & Trust Company to the credit of Frank Richard. If this was intended as a payment to his brother of his share of the purchase price, the deposit should have been $300, since Dr. Richard had received $600 in cash on the execution of the acts of sale. On November 20, 1920, Dr. Richard was paid $100 on account of one of the notes given for the credit portion of the sales. He made no deposit at that time. On November 30, 1920, however, he deposited $300, which was in excess of the amount he then owed plaintiff, and on December 19, 1920, he made a further deposit of $200, at which time, according to defendants' contention, he owed plaintiff nothing at all. As a matter of fact, with the exception of the deposits on August 7, 1920, and November 20, 1920, all of the other deposits, totalling $900, which defendants contend show payment, were made prior to the payments made by the vendees on their respective notes. Defendants' inference is that the deposits were made by Dr. Richard in anticipation of his collecting the amount of the notes. We do not think that the inference is a reasonable one, since Dr. Richard was not indebted to plaintiff until he had received payment on account of the notes, and it is contrary to human nature for a debtor to discharge his debt before it is due.

Plaintiff testified that the funds carried in the bank account in his name were expended by him principally in paying laborers who were employed on a farm, known as the Devillier tract, the individual property of Dr. Gerasime Richard, and for ditching and fencing on that tract, and for fencing, carpentry, and clearing on the Caffery tract, which was also owned by Dr. Richard individually. He testified, further, that he used a part of the funds for similar work on the Sibille tract.

which was owned jointly by him and his brother, Dr. Richard. Plaintiff's testimony on this point is corroborated by many of the original checks, which he was able to produce, drawn on the account to the order of the laborers who worked on all of the tracts. He is also corroborated by some of the workmen who received checks and who testified on the trial of the case. Numerous checks were missing, but plaintiff swore that they were drawn to the same payees and for the same purposes as those that were produced, except some checks which he issued in favor of certain merchants of the village of Port Barre in settlement of the grocery and clothing account of his family, amounting, approximately, to $700 or $800 a year. The evidence also discloses that at least on two occasions, Dr. Richard, signing his brother's name per his own, drew checks aggregating $400 against the account for his own use. No countervailing testimony was offered by the defendants.

Upon this showing, we are unable to hold that defendants have discharged the burden imposed upon them by the law of sustaining their plea of payment by a preponderance of the evidence. The bank account is not of itself sufficient for the purpose; and plaintiff's evidence clearly shows the contrary. Nor is the alleged staleness of plaintiff's demand a circumstance sufficiently strong to overcome the evidence in his behalf contained in the record. It is not denied that the deeds of sale of the two thirty-arpent tracts were not signed by him, and no powers of attorney were attached thereto. Nor is it denied that Dr. Richard received the proceeds of those sales. Therefore he, or his widow and heirs after his death, owe one-half of these proceeds to the plaintiff, unless they are able to affirmatively establish the payment of the debt, which is not prescribed. Moreover, plaintiff

testified that he was unaware of the sale of the two tracts of land in question until June 26, 1925, when the remainder of the tract was sold by a deed to which he was a party. The present suit was filed in September, 1927.

When plaintiff offered to prove that Dr. Gerisame Richard received the entire purchase price of the sale of the remainder of the Garland tract to the Eicher-Woodland Lumber Company, the testimony, upon defendants' objection, was excluded by the court below. We think the ruling was erroneous. The proof offered was not against or beyond the contents of the authentic act, nor did it tend to contest the acknowledgment of payment made in that instrument, within the meaning or spirit of Civ. Code, arts. 2236, 2237, 2238, and 2276. The offer of the evidence was not made for the purpose of affecting the title to the real estate, but for the purpose only of showing that, as between the vendors, the entire purchase was received by one of them, who should account to the other for one-half of the money so received. That evidence could not injuriously affect the rights nor impose any obligations upon the purchaser. Vide, Lee v. Carter, 52 La. Ann. 1453, 27 So. 739; Bernheim v. Pessou, 143 La. 609, 79 So. 23.

Numerous cases have been cited by defendants in support of the ruling of the court below, but an examination of the cases shows that they are inapplicable to the issue presented in the case now before us. In the cited cases, the interest of the parties litigant were opposed to each other, and the evidence excluded was offered for the purpose of contradicting some material clause or recital in the written instruments. In the case now before us, the controversy is between those parties to the act of sale who were on the same side and whose interests were identical.

After the court below had sustained defendants' objection and the evidence was closed, the case was reopened, on motion of plaintiff's attorney, for the purpose of allowing plaintiff to introduce the rejected evidence "solely for the purpose of permitting the appellate court to review the ruling excluding the evidence." The procedure was objected to by defendants, who reserved a bill. The evidence is therefore before the court, and enables us to make a final disposition of the case on the present appeal. It shows that the entire purchase price of $3,000 was received by Dr. Gerasime Richard personally, and was placed to his individual account in the Planters' Bank & Trust Company. No showing whatever is made by defendants of any settlement or payment by Dr. Richard of the one-half of the $3,000 belonging to plaintiff. That amount, therefore, is due him, and he must have judgment therefor.

The defendants are liable to plaintiff in the proportion of their respective interests in the succession of the decedent, viz. Mrs. Annie Belle Cain Richard, the widow, one-half, and Mrs. Zula Richard Pollingue and Annie Belle Richard Chauvin, the daughters, one-fourth each.

For the reasons assigned, the judgment appealed from is annulled, and it is now ordered that there be judgment in favor of plaintiff, Frank Richard, and against Mrs. Annie Belle Cain Richard in the full sum of $1,050, and against Mrs. Zula Richard Pollingue and Mrs. Annie Belle Richard Chauvin in the sum of $525 each, with legal interest thereon from judicial demand; the costs of the suit to be paid by the defendants in the proportion of one-half by Mrs. A. B. C. Richard and one-fourth each by Mrs. Z. R. Pollingue and Mrs. A. B. R. Chauvin.

O'NIELL, C. J., absent, takes no part.