33 C.C.P.A.(Patents)

### Application of WOOD et al.
### Patent Appeal No. 5138.

Court of Customs and Patent Appeals.
April 1, 1946.

548

Arthur Wm. Nelson, of Chicago, Ill., and William L. Edmonston, of Washington, D. C., for appellants.

W. W. Cochran, of Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

Appellants have here appealed from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the examiner of claims· 9, 12, 16, 17 and 18 of their application for a patent relating to the seating portion of a chair.

The claims are as follows:

"9. A chair seat embodying therein a seat bottom, body engageable means supported upon said seat bottom and arranged to provide a channel in the seat bottomed by an associated part of the seat bottom in line therewith, said channel having ·parts one of which curves rearwardly and laterally from the front central portion of the seat toward the rear portion of opposite sides of the seat and another part of which is disposed between the sides of the seat and opens at one end into the first mentioned part of the channel and· extends away therefrom toward the rear of the seat, the central portion of said one part of said channel being of such width as to permit the depression of the fleshy parts of the legs of the occupant thereinto so that the front edge of said channel part functions as an abutment sensible to said leg parts to remind the occupant to return to proper position on the seat."

"12. A substantially rectangular chair seat embodying therein a seat bottom, a pair of body engageable members disposed each upon an associated rear end corner of the seat bottom, said members terminating at their front ends short of the front of the seat and spaced apart but sloping toward each other at their adjacent edges. to leave a channel in the median rear portion of the seat, body engageable means at the front of the seat bottom and extending from side to side of the seat, said means being spaced at its rear edge from the front edge of said body engageable members to leave a channel, the first mentioned end of the channel opening into the second mentioned channel substantially at its mid portion."

"16. A chair seat having a generally transversely disposed channel therein spaced substantially rearwardly from the front edge of the seat, at least the front central portion of the channel being closer to the front edge of the seat than to the rear edge, the end portions of said channel extending toward the rear end of the sides of the seat and the central portion of the channel being of such width as to permit

the depression of the fleshy part of the legs of the occupant thereinto so that the front edge of the channel functions as an abutment sensible to said leg parts to remind the occupant to return to proper position on the seat."

"17. A chair seat having a plurality of channels therein, one of said channels extending generally in a direction transversely of the seat and the other generally in a direction toward the rear of the seat and disposed substantially centrally between the sides of the seat to form two body engageable seat portions having parts that slope downwardly toward each other at said other channel."

"18. A chair seat having a plurality of channels therein, one of said channels extending generally in a direction transversely of the seat and terminating short of the sides of the seat and the other extending in a front to rear direction and opening at one end into the other of said channels and stopping short of the rear of the seat, said channels dividing the seat into a front portion and two rear portions, the front portion sloping downwardly toward the front edge thereof, and the two rear seat portions having parts that slope downwardly toward each other at said other channel."

The Primary Examiner allowed claim 14 and pointed out certain defects in claim 11 and rejected it. The board affirmed the action of the examiner in rejecting the claims on appeal here but allowed claim 11 which was amended to meet the criticism of the examiner. The allowed claims follow:

"11. A chair seat embodying therein a seat bottom, body engageable means on the seat bottom and including portions at the rear side parts of the seat bottom and terminating short of the front of the seat, said portions being spaced apart at their adjacent sides so as to form a channel therebetween which is disposed on the medial line of the seat from front to rear, said body engageable means including a portion at the front of the seat and spaced from the front of said first mentioned portions to form a channel therebetween extending substantially transversely of the seat from side to side thereof, the first mentioned channel opening at its front end into the second mentioned channel at a point between its ends, said channel being bottomed by parts of the seat bottom in line therewith, parts of the body engage-

able means adjacent the second mentioned channel sloping downwardly toward each other at said part of said second mentioned channel."

"14. A chair seat embodying therein a seat bottom, a plurality of body engageable members supported upon the rear side parts of the seat bottom and terminating short of the front of the seat, said members being spaced apart at their adjacent edges so as to form a channel therebetween which is disposed on the median line of the seat from front to rear, said members having top surfaces inclined upwardly from said channel toward the sides of the seat, body engageable means on the seat bottom at the front of the seat and spaced from said body engageable members to form a channel therebetween extending substantially transversely of the seat from side to side thereof, the first mentioned channel opening at its front end into the mid portion of the second mentioned channel, the top surface of said body engageable means, in at least the central portion thereof, being inclined at the front margin toward the front of the seat."

The board in its decision stated:

"The appealed claims are directed to a chair seat which comprises a rigid base portion having certain ventilating openings therein. At the back of the seat are a pair of pads which are spaced apart so as to form a channel. These back pads slope upwardly. At the front there is a single pad extending all the way across the seat. Between this front pad and the two back ones is a channel registering with the ventilating openings in the seat. It is alleged that by sloping the two back pads upwardly from the center it will tend to crowd in the pelvic bones and the transverse channel will tend to prevent one from slipping backward on the seat. The seat is also provided with a back rest but this is not involved in the appealed claims.

"The structure shown in the various patents cited are quite simple and need no detail description. Perhaps the most pertinent reference is the patent to Wood, cited above. This seat is convex when viewed from above, but it lacks the transverse groove or channel disclosed in the present case. The French patent cited shows a transverse channel in Fig. 3, but this appears to be filled with a cord or like element. *It is believed that patentable novelty is disclosed here and that the same could be adequately covered by claims 11 and 14.*

*While the other claims are not deemed to be met by the prior art, still they are considered unnecessary and the rejection of the same must be sustained."* [Italics ours.]

The invention is sufficiently described in the claims and in the first above-quoted paragraph of the board's decision.

The references relied upon by the examiner are as follows:

Ollis, 1,961,641, June 5, 1943;

Wood, 2,061,054, November 17, 1936;

Fisher, 2,199,047, April 30, 1940;

Laroche (French) 807,887, October 26, 1936.

In view of our disagreement with certain features of the board's decision, we think it important to here set out the language used by the examiner in rejecting the appealed claims:

"Claims 9, 11, and 12 are considered unpatentable over Fisher, Laroche and Wood, applicant's patent. Fisher shows the idea of providing deep channels which would provide abutments for the fleshy parts of the upper legs of an occupant. There would be no invention in making Fisher's transverse channel extend to the sides of cushion and making the cushion rectangular as taught by Laroche, Figure 3, and putting a seat bottom under the cushion and making the edges of cushion along the channels and at the front sloping and making the cushions section slope toward the middle as taught by applicant's patent.

"In claim 11, line 13, 'channel' should be plural. At the end of the claim the definition 'at said part of said second mentioned channel' is indefinite. It is not known what is meant. The words 'said part' have no antecedent.

"Claim 16 is considered unpatentable over Ollis in view of Laroche. There would be no invention in making the ends of Ollis' channel extend into the sides of the base instead of the rear edge as taught by Laroche. In Ollis' the channel is wide enough to provide a noticeable abutment.

"Claim 17 is considered unpatentable over Laroche in view of Wood. There would be no invention in providing only one central channel, 4, in Laroche's cushion, Figure 3, and having the tops of the side cushion sections slope toward each other as taught by Wood.

"Claim 18 is rejected as not patentable over the references applied to claim 17. There would be no invention in closing the ends of the channels and sloping the front edge of Laroche's cushion as taught by Wood."

It will be noted that the examiner rejected the appealed claims (and claim 11) upon the prior art and gave his reasons therefor. The board disagreed with the examiner and stated:

"It is believed that patentable novelty is disclosed here and that the same could be adequately covered by claims 11 and 14. While the other claims are not deemed to be met by the prior art, still they are considered unnecessary and the rejection of the same must be sustained."

The appellants did not present oral argument in this appeal but in their brief urge the error in the board's decision to which we have last herein referred and also question the holding of the examiner.

The appellants in their brief point out the features of the appealed claims upon which they rely for patentability and the features which, according to their contention, the prior art did not meet, as was held by the board. They also state in what respects each of the claims differ from the others.

Since we here reproduce each of the appealed claims and the two allowed claims, and in view of our conclusion, it is not necessary to state here in what respects the claims differ. It is sufficient to state that they differ in respects which are important in view of the issue to be decided.

The Solicitor for the Patent Office, in supporting the decision appealed from, stated:

"* * * While a rejection on this ground [multiplicity] is not frequently made where, as here, the claims are not numerous, it is submitted that such rejection is proper where an applicant presents more claims than are necessary to protect his invention. The presentation of unnecessary claims tends to confuse rather than 'particularly point out and distinctly claim' the invention as is required by Section 4888, R.S., 35 U.S.C.A. § 33."

He then states that said Section 4888, R.S., "makes reference to 'the claim' and thus implies that one claim may be sufficient to 'particularly point out' the invention."

Whether the Solicitor implies that the statute authorizes only the allowance of *one claim* under all circumstances we do not know, but certainly this is not the construc-

tion given to the statute throughout the years since its enactment.

The Solicitor also relies upon the case of In re Prescott et al., 51 App.D.C. 281, 278 F. 590, 591, in which the court allowed a single claim of the seventeen claims which were on appeal and then stated:

"Inasmuch * * * as claim 28 completely covers applicants' contribution to the art, there is no reason for allowing a large number of claims and thus inviting controversy and litigation."

Claim 28 was allowed.

The Solicitor also cites this court's decision in Re Einstein, 46 F.2d 373, 374, 18 C.C.P.A., Patents, 885, which held that:

"Two distinct claims for the same substantial matter, differing only in nonessentials, cannot both be sustained."

▆ Neither the examiner nor the board rejected the claims upon the ground of multiplicity, which ground of rejection is applied when by unduly and unnecessarily multiplying claims the applicant's alleged invention is so obscured as not to meet the requirements of the statute that the invention be fully, clearly and concisely described, and distinctly claimed in the application.

▆ It would seem to follow that in a proper case where the applicant presented so many claims that he had obscured rather than clearly defined his invention the Patent Office would be warranted in refusing to consider the application and in rejecting all the claims until they had been reduced in number by the applicant within reasonable limits. This was not done in the instant case.

▆▆ It is a matter of common knowledge that patent applicants have frequently obscured their inventions and not complied with the spirit and letter of the statute by presenting a great multiplicity of claims, most of which were of no value and served only the purpose of confusion. It has been stated in this court by counsel for the Patent Office that applications including as high as 204 claims have been filed for comparatively simple inventions and that such procedure, even if sanctioned by law, puts an intolerable burden on the officials of the Patent Office. As we have said before, we think it wholesome to discourage this tendency towards undue prolixity where it is clear that the purposes of the statute are not being carried out properly, and as we have said in substance elsewhere we had no disposition in our holdings to lend encouragement to a practice so universally condemned. In re Buttolph, 75 F.2d 629, 22 C.C.P.A., Patents, 973.

▆ Unless we adopt the implied suggestion of the Solicitor that an applicant is only entitled to *a* claim, it is obvious that it would be difficult to lay down any hard and fast rule as to just how many claims an applicant may be justified in presenting to the Patent Office. It being impracticable to establish a definite line of demarcation as to the number of claims, the question must be decided upon the particular circumstances presented in each case.

▆ That an applicant for a patent has the right to express in a single application and in more than one claim the same invention, although worded in different language or including elements omitted in other claims which do not affect the patentability of one claim over another, and that he may be entitled to have in a single application article and method claims, Markush claims, species claims and broad and narrow claims is too well-settled to justify extended argument here. It has been the settled practice of the Patent Office and the courts, with rare exceptions, to permit applicants considerable latitude in defining in more than one claim their real inventions.

In a recent decision by this court, Application of Barnett, Cust. & Pat. App., 155 F.2d 540, decided June 7, 1946 (dissenting opinion not based on the instant question), this court pointed out the holdings of the courts on this question and we need not repeat here what we said there except in a general way to say that good patent lawyers usually present and are by the Patent Office permitted to present several claims covering the same invention, though worded in different language, in order that the real invention may be properly described and that the interpreters of the same may be aided in their interpretation and in arriving at what is the real invention claimed.

In Application of Barnett, supra, we pointed out the inadvertence of the statement in the Einstein case, supra, and called attention to the fact that the authorities there cited did not support the above-quoted statement therein and that the practice of the Patent Office in allowing claims, with few exceptions, was absolutely to the contrary.

As before stated, the Solicitor for the Patent Office has also relied upon that seldomly cited case, In re Prescott et al., supra, in which one claim was allowed and sixteen were rejected. It is interesting to note that this case, decided in 1922, has never been cited by that court except in matters unrelated to the question there and here involved and that as far as we have been able to find has never been cited by this court or by the Patent Office in its decisions except in cases where the same facts as are here were not present and in which the ruling of the Prescott case was not controlling. In some of the Patent Office decisions, however, in which the Prescott case has been cited, it has been held that it was proper to reject a number of claims which differed from another single claim where the several claims contained limitations which did not make them inventive over the other claims.

■ It may be that objectionable multiplicity might rest in a lengthy and unnecessary recital, in a number of claims, of immaterial limitations, where results contrary to the purposes of the statute are brought about. However, for infringement purposes we can readily understand that the inclusion in a claim of a limitation old in the art and not of vital importance to its patentability might be helpful in determining the question of whether an invention has been infringed, and certainly, unless claims of this character are unduly multiplied, no harm can be done in allowing them.

■ The difficulty with the decision appealed from, which is also present in the holding in the Prescott case, supra, is that it involves the question as to who is to determine and under what circumstances is it to be determined whether one or two claims are all that is necessary for protecting an admitted invention. Surely as a general proposition the one who prepares the application and familiarizes himself with his case and the prior art and the applicable law ought to have considerable latitude in determining what is necessary for the full protection of his patent rights.

■ In the instant case the claims are concededly not met by the prior art and inventive novelty is admitted. Only seven claims were presented. We think the board gave no justifiable reason for its rejection of claims 9, 12, 16, 17 and 18, and its decision affirming the examiner's rejection as to these claims is reversed.

Reversed.