**HALL v. KELLER et al.**

No. 12977.

United States Court of Appeals
Fifth Circuit.

March 20, 1950.

Rehearing Denied April 20, 1950.

754

Thomas E. Scofield, Kansas City, Mo., Gilbert H. Graham, Lake Charles, La., for appellant.

Reginald E. Caughey, Los Angeles, Cal., Leonard S. Lyon, Los Angeles, Cal., for appellees.

Before McCORD and BORAH, Circuit Judges, and WRIGHT, District Judge.

McCORD, Circuit Judge.

Jesse E. Hall, on November 5, 1940, was issued Letters Patent 2,220,237 on application Serial No. 119,246, filed January 6, 1937, for a device used to clean the walls of oil wells. The function of the device, or centralizer, is to clean from the walls of oil wells mud and other irregularities, and to condition the walls by exposing the formation, to the end that a better bond may be had with cement when it is placed around the casing. The device also holds the casing centrally in the hole or well, and thereby permits a more even and uniform distribution of the cement which surrounds the pipe.

On December 22, 1947, Hall brought this suit against J. Frank Keller, et al., seeking injunctive relief and damages for an alleged infringement of the above patent. The defendant, Keller, operates a place of business at Iota, Louisiana, under the name of Keller Oilfield Specialties, and among the tools offered by him for sale is also a device for cleaning and conditioning the walls of oil wells manufactured by B and W, Inc., of Long Beach, California. This is the accused device which Hall alleges is infringing his patent. B and W, Inc., as the manufacturer and real party in interest, has intervened, and on motion was made party defendant to this suit. Keller has been eliminated from the action except as a nominal defendant.

On September 3, 1935, Hall sought to obtain letters patent on an earlier application Serial No. 38,891, covering a predecessor device of the patent in suit, but either through neglect of his attorney, or because of insufficient description in the application, a patent was never issued thereon, and this application was finally abandoned. On January 6, 1937, certain allowed claims of this first application, Serial No. 38,891, were incorporated and filed in a new application, Serial No. 119,246. This second application was later approved by the Patent Office, and Letters Patent 2,220,237, or the patent in suit, were finally issued thereon on November 5, 1940.

During the years 1936 and 1937, an attorney named Samuel H. Robinson, of Los Angeles, California, was employed by Hall to render legal services in connection with the promotion of his inventions. On May 8, 1936, Hall assigned Robinson a one-fifth interest in his application Serial 38,891, the application which was subsequently abandoned. On June 12, 1936, Hall and Robinson, as joint owners of this early application, licensed the Coast Oil Fields Supply Company, a California corporation, to manufacture, sell and use the well cleaner or centralizer covered by this application. At that time the second application, Serial No. 119,246, had not been filed. On April 15, 1937, about three months after the filing of the second application, Hall and Robinson entered into a supplemental license agreement with the same California company, granting it certain additional rights under this new application.[1] This supple-

1. One of the clauses of this supplemental license agreement reads:
   "Whereas, Licensors are the owners of certain inventions and patent rights covered by an application for United States Letters Patent filed by J. E. Hall in the United States Patent Office on September 3, 1935, bearing Serial No. 38,891 entitled, 'Casing Attachment'; and

that certain application for United States Letters Patent filed by J. E. Hall in the United States Patent Office on January 6, 1937, bearing Serial No. 119,246, the latter invention embodying an improvement and addition to the form and function of the casing centering devices theretofore known and employed in the art, the said improvement and addition

mental license agreement expressly limited sales of the Hall device by the California company to certain defined territory, and it is without dispute that it was granted primarily as a concession to the company to protect it from infringement suits under patents which might later issue on these applications. Thereafter, the first application was abandoned, and the patent here before us was granted on the second application, Serial No. 119,246, over five years after the first application was filed.

. The Coast Oil Fields Supply Company manufactured and sold the Hall centralizers covered by the old abandoned application for some time after the license agreements were executed, but due to various difficulties, financial and otherwise, never manufactured or sold the improved device covered by the second application. · After the death of one of its owners, the Company went out of business and the license agreements were cancelled. Robinson also died sometime thereafter. In the meantime, Hall had begun to manufacture and sell his centralizer to the owners and operators of oil wells in Texas and throughout the country. His business began to prosper and grow. B and W, Inc., the defendant, thereafter began to manufacture and sell the accused device out in California, and its business increased until it finally came into direct competition with Hall, whereupon Hall brought this suit for infringement. Several months after the present suit was filed, and after B and W, Inc., had notice of Hall's complaint of infringement, it purchased from Ben S. Berry, as executor of the estate of Samuel Robinson, and from Robinson's widow, such interest as Robinson owned in Hall's abandoned application, Serial No. 38,891, and any interest Robinson or his widow might have had in Serial No. 119,246, the application upon which the patent in suit was issued.

The principal question before us is whether, under the license agreements and the purchase of the claimed interest in this patent from Robinson's estate, the defendant, B and W, Inc., has acquired any interest in the Hall patent which would justify the action of the trial court in dismissing this suit.

This case stands out separate and apart from the ordinary patent suits to be found along the legal highways. Appellees here invoke the usual defenses of noninfringement and invalidity of the patent in suit, and earnestly contend that the Hall patent is worthless and a nullity for the reason that it is throttled and destroyed by prior patents in the art. They marshal these prior patents and parade them before us along with the patent in suit, as exhibits in the case, and in an effort to show us there is no invention in the Hall device. Finally, realizing that they may fail in their attempt to invalidate the Hall patent, and that they may be found to have infringed it, they set up as a defense the evidence of their having acquired an assignment of an alleged interest in the Hall patent from the Robinson estate, which was admittedly obtained after this suit for infringement was filed, and long after defendant had been informed that it had no right to manufacture or sell the accused device.

We have grave doubts whether, in the absence of a cross appeal raising such issues, appellees may now properly assert the defenses of noninfringement and invalidity of the Hall patent. Here, so far as the record reveals, there has been no appeal from the decision of the trial court on these issues. To the contrary, the judgment brought before us for review appears to be restricted solely to the question of whether B & W, Inc., has any interest in the patent before us. We consider it well settled that in the absence of a cross appeal a party cannot require a federal appellate court to consider or pass upon rulings against him in the trial court, but that he will normally be heard only in support of

---

being an undertwisting of the spiralled springs embodied in certain of said devices so that the springs so twisted will operate effectively to scrape and clean the walls of the hole, in addition to centering

the casing, * * *" Nowhere does the agreement set out or disclose the exact interest of Robinson, if any, in the second application, or how it arose.

the rulings appealed from. Morley Construction Co. v. Maryland Casualty Co., 300 U.S. 185, 57 S.Ct. 325, 81 L.Ed. 593; Arkansas Fuel Oil Co. v. Leisk et al., 5 Cir., 133 F.2d 79. However this may be, we have carefully considered these defenses, and the record evidence alleged to substantiate them, and find them wholly without substance or merit. A careful examination of the voluminous record, along with the exhibits in the case, leads us unerringly to the conclusion that the Hall patent is valid, and that the accused device of appellees infringes it. Donner v. Sheer Pharmacal Corp., 8 Cir., 64 F.2d 217; Fairbanks, Morse & Co. v. Stickney et al., 8 Cir., 123 F. 79; Buchanan et al. v. Wyeth Hardware & Mfg. Co., 8 Cir., 47 F.2d 704; Stevens v. Carl Schmid, Inc., 2 Cir., 73 F.2d 54; Cantrell v. Wallick, 117 U.S. 689, 694, 6 S.Ct. 970, 29 L.Ed. 1017; Cochrane v. Deener, 94 U.S. 780, 787, 24 L.Ed. 139; Temco Electric Motor Co. v. Apco Co., 275 U.S. 319, 328, 48 S.Ct. 170, 72 L.Ed. 298.

■ The trial court erred, however, in dismissing this suit because of the claimed interest of appellees in the Hall patent. While the record shows that B and W, Inc., by virtue of the assignment from the Robinson estate, acquired the one-fifth interest assigned by Hall to Robinson in the abandoned application, Serial No. 38,891, it becomes manifest that the claims transferred from that first application in no wise warrant or justify any interest in the particular claims of the patent in suit. The device of patent 2,220,237, or the patent issued on application Serial 119,246, differs materially from the device of the aban-

doned application, in that the blades or bowed members extending between the collars are twisted longitudinally on their axes to impart to them a cutting edge, whereas the tool of the abandoned application, Serial No. 38,891, merely had spiral bowed strips without the tangential or axial twist in the blades. This difference is reflected in the express language of the patent claims here involved.[2] It thus conclusively appears that the claims numbered 1, 3 and 4 were not among those transferred from the early abandoned application, Serial No. 38,891, but were for a *separate and distinct invention*. Moreover, nowhere in the record is there to be found an assignment to Robinson of any interest whatever in the second Hall application, Serial 119,246, upon which the patent before us was issued. We conclude, therefore, that Robinson's one-fifth interest in the abandoned application gave neither him nor his estate any interest in the claims of the patent in suit, and that B and W, Inc., acquired no such interest under and by virtue of the assignment. This holding is in accord with decisions to the effect that the claims of a patent are separable and distinct, each defining a separate invention and each treated in law as a separate grant. Hogg v. Emerson, 6 How. 437, 12 L.Ed. 505; Stimpson v. Woodman, 10 Wall. 117, 19 L.Ed. 866; Steinmetz v. Allen, 192 U.S. 543, 24 S.Ct. 416, 48 L.Ed. 555; see also, Title 35 U.S.C.A., Section 33; Application of Wood, 155 F.2d 547, 33 C.C.Pa.Patents 984; Ruben v. Ariston Laboratories, D.C., 40 F.Supp. 551.

■ Pretermitting the question of whether the license agreements had been

2. Pertinent portions of Claims 1, 3 and 4 of the patent in suit read as follows:

Claim 1—" * * * flexible members extending between and connected to said parts (collars), said members being twisted both helically and tangentially as to the casing to each present a helical, out-bowed leading edge for scraping the wall of a bore and a trailing edge that is normally clear of the wall of the bore.

Claim 3—" * * * flexible spirally curved members connecting the collars, bowed outwardly to bear on the wall of the bore and twisted to scrape the said wall.

Claim 4—" * * * flexible members rigidly connected to the collars spiralled about the longitudinal axis of the casing, bowed outwardly between their ends and twisted about their individual axes, each member having spaced, overlapping relation as to those laterally adjacent."

The claims transferred to the patent in suit from the early abandoned application, Serial 38,891, unlike the above claims of the Hall patent, relate primarily to the method of mounting the centralizer device on its casing, and are not here involved.

cancelled prior to the acquisition of the alleged interest in the patent thereunder from the Robinson estate, we further hold that in the absence of an independent assignment to Robinson of an interest in the second Hall application, the mere language of the supplemental license agreement that Hall and Robinson were owners of the rights under both applications was insufficient to transfer any interest to Robinson in the claims of the patent in suit. It is without dispute that Hall was required to join in this supplemental license agreement as evidence of his good faith, and solely as a concession to the Coast Oil Fields Supply Company, which was unwilling to undertake the manufacture and sale of the improved Hall centralizer until it received this assurance that it would be free from legal entanglements in the form of infringement suits. While this concession may have been sufficient consideration to support the license and agreement to manufacture the device as between Hall and the California company, we find no consideration whatever moving from Robinson to Hall sufficient to support the alleged transfer of an interest in the second Hall application, from which the patent here found life. We think that any interpretation placed upon the recital clause of this supplemental license agreement which gives it that effect is clearly erroneous, for it reads into the language an interest in Robinson which never existed, and one which would impose a blight upon the Hall patent in the form of an unwarranted grant or transfer of interest never contemplated or intended by the parties. See Kearney v. Lehigh Val. R. R. Co., C.C., 27 F. 699, 701; Waterman v. Mackenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923; Walker on Patents (Deller's Ed.), p. 1404. Furthermore, if the language used is reasonably subject to such interpretation, it is clearly ambiguous, and resort may be had to parole evidence to ascertain the true intention of the parties concerning the purpose and intended effect of this sec-

ond license agreement. In this connection, the record reveals without dispute that Robinson's interest in the second Hall application was solely in the royalties to be collected from the California company under the license contracts. The patent in question was issued by the Patent Office to Hall alone, and there is no evidence whatever that Robinson ever claimed any interest in the second Hall application other than in the royalties during his lifetime, or that Hall ever intended to pass any interest therein under the supplemental license agreement. It should not be so construed. Osborne v. Endicott, 6 Cal. 149, 65 Am.Dec. 498; Hamill et al. v. Moore, 194 La. 486, 193 So. 715; Perkins v. Maiden, 57 Cal. App.2d 46, 134 P.2d 30; Crisp County, Ga. et al. v. S. J. Groves & Sons Co., 5 Cir., 73 F.2d 327; Higgins v. California Petroleum & Asphalt Co., 109 Cal. 304, 41 P. 1087; Lowell v. Lowell, 185 Iowa 508, 170 N.W. 811; Schupphaus v. E. I. Du Pont Powder Co., D.C., 204 F. 624; 32 C.J.S., Evidence, § 862, p. 796; Garrett v. Ellison, 93 Utah 184, 72 P.2d 449, 129 A.L.R., p. 673.

We find no merit in the contention that because of the alleged commingling of claims in the patent applications this suit for infringement cannot be maintained. The equitable principle relied upon, that one who commingles and confuses goods of another with his own forfeits his sole ownership in his goods, requires that the goods be inextricably mingled, and also that the confusion be willfully done with a fraudulent intent or purpose. Such is not the case here. See Hentz et al. v. The Idaho, 93 U.S. 575, 23 L.Ed. 978; French v. Robbins, 172 Cal. 670, 158 P. 188; U. S. Colloid Mill Corp. v. Myers et al., D.C., 6 F.Supp. 283. Nor is appellant bound by any conclusive presumption under the California statute,[3] so as to be estopped from disclaiming the alleged interest of appellee, B and W, Inc., in the patent in suit. Gas Appliance Sales Co., Inc., v. W. D. Bastian Mfg. Co., 87 Cal.App. 301, 306, 262 P. 452; Osborne v.

---

**3.** Section 1962, Subdivision 2, of the Code Civil Procedure of California, which provides for a conclusive presumption as to "The truth of the facts recited, from the recital in a written instrument be-

tween the parties thereto, or their successors in interest by a subsequent title; but this rule does not apply to the recital of a consideration."

758

Endicott, 6 Cal. 149, 65 Am.Dec. 498; U. S. v. Golden, 10 Cir., 34 F.2d 367; Wagnor v. Blume, 71 Cal.App.2d 94, 161 P.2d 1001; Richard v. Cain, 168 La. 608, 122 So. 866; Commercial Germania Trust & Savings Bank v. White, 145 La. 54, 81 So. 753; Smith v. Chappell, 177 La. 311, 148 So. 242.

The judgment is modified so as to hold that appellee, B and W, Inc., has no right, title or interest in the particular claims of the patent in suit; that the Hall patent is valid, and that the accused device of appellees constitutes an infringement upon it sufficient to justify injunctive relief. Accordingly, the defendant is hereafter enjoined from the manufacture and sale of the accused device, and from further infringing the patent of Jesse E. Hall. No damages are allowed, but costs will be taxed in full against appellees.

The judgment, as modified, is hereby affirmed.

Modified and affirmed.