424 So.2d 1143 (1982)
Lyndall Sharp WOOD
v.
Karl D. WOOD.
No. 82 CA 0269.
Court of Appeal of Louisiana, First Circuit.
December 21, 1982.
*1144 Mike J. Balen, Covington, for plaintiff, appellant.
Lyndall S. Wood, in pro. per.
Richard A. Tonry, Chalmette, and Bruce G. Reed, Atty., New Orleans, for defendant appellee.
Before LOTTINGER, COLE and CARTER, JJ.
LOTTINGER, Judge.
This suit involves the judicial partition of a community property regime. At issue is the status of several tracts of land acquired during the marriage in the name of the husband, Karl D. Wood.
Appellant, Lyndall Sharp Wood, married Karl D. Wood on March 3, 1949. The couple was divorced on March 29, 1979. During the thirty-year existence of their community property regime, five parcels of land in St. Tammany Parish were acquired in the name of Karl D. Wood, identified briefly as follows:

*1145 1) 74.47 acres acquired by act dated September 30, 1956 and recorded in COB 246, folio 338, and by act dated March 22, 1957, and recorded in COB 252, folio 585.
2) Parcel of land and improvements East ½ of East ½ of Square 25 in Town of Talisheek acquired by act dated December 23,1958, and recorded in COB 268, folio 253.
3) 115.55 acres acquired by act dated December 23, 1958 and recorded in COB 271, folio 14.
4) Lot Number 4, Square 16, and Lots Numbers 4, 5, 6, 7 and 8, Square 2, Town of Sun acquired by act dated December 23, 1958, recorded in COB 268, folio 251.
5) 10 acre parcel and improvements in Section 22, Township 5 South, Range 13 East, acquired by act dated September 16,1969, and recorded in COB 548, folio 254.
Lyndall Sharp Wood filed suit for a partition of community property, alleging that these five parcels formed a part of the community, and prayed for a partition in kind.

TRIAL COURT
At trial, Karl D. Wood, through his attorney of record, admitted that Parcel #5, as listed above, was the family homestead and was community property. Subject to objections maintained by Mrs. Wood's counsel, the trial court received parol evidence which indicated that Parcels # 1, 2, 3, and 4 devolved to Karl D. Wood through his deceased father's succession, as part of a partitioning agreement with his co-heirs, his mother, and his uncle.
The acts transferring title to Parcels # 1, 2, 3, and 4 were in the form of a sale and recited cash considerations. None of the acts contained the "double declaration" that the property was acquired with the separate funds of the husband and was obtained for his separate estate. The trial court, while noting the absence of any double declarations, adjudged Parcels # 1,2,3, and 4 to be the separate property of Karl D. Wood. The basis for this decision was the court's determination that a partition of their father's succession between Karl D. Wood and his co-heirs was actually intended through the acts in question, rather than a sale. Parcel # 5 was held to be community property, and the trial court found it was not divisible in kind. Lyndall Sharp Wood has appealed devolutively.

SPECIFICATIONS OF ERROR
Appellant, Lyndall Sharp Wood, argues generally that the absence of a double declaration in the acts by which her husband obtained immovable property during the marriage creates an irrebuttable presumption that the properties obtained thereby fell into the community of acquets and gains, and that the trial court erred in receiving controverting parol evidence and in declaring Parcels # 1, 2, 3, and 4 to be Karl D. Wood's separate property. She also reasserts her contention that the parcels can be partitioned in kind.

DOUBLE DECLARATION
The jurisprudence interpreting now-repealed[1] La.Civ.Code arts. 2334 and 2402[2] *1146 has established that as to immovable property conveyed to the husband for a cash consideration during marriage, there is an irrebuttable presumption that it is community property unless there is contained in the act of acquisition the double declaration that the property was acquired with funds belonging to the husband separately, and that it was being acquired for his individual estate. See: Phillips v. Nereaux, 357 So.2d 813 (La.App. 1st Cir.1978); rehearing denied, 361 So.2d 228 (La.App. 1st Cir.1978) and cases cited therein; Barnett v. Barnett, 339 So.2d 495 (La.App. 2nd Cir.1976); writ ref. 341 So.2d 1127 (La.1977) and cases cited therein.
Our brethren on the Third Circuit in Primeaux v. Libersat, 307 So.2d 740 (La.App. 3rd Cir.1975); writ granted, 310 So.2d 847 (La.1975); reversed on other grounds, 322 So.2d 147 (La.1975) discussed the bases for the double declaration requirement as follows:
"One such basis involves public policy and has been recognized by our courts for almost a century, this being the fact of notice to third parties via recordation in the public records. The function of the double declaration is to place the public on guard and on inquiry as to the actual existing facts. Thus they can presume that anything in the name of the husband, without the declaration, is held for the community. Without requiring such a declaration and thus enabling the husband to freely fix at any subsequent time the tenure by which the property is held, the title to such would be `an uncertain, floating title, neither advisable nor permissible'. [Footnote omitted.] However, if in turn, the property is in the wife's name the public cannot presume that it is community property and must investigate. Sharp v. Zeller, 110 La. 61, 34 So. 129 (1902); Succession of Burke, 107 La. 82, 31 So. 391 (1902); Hero v. Block, 44 La.Ann. 1032, 11 So. 821 (1892); Huie at 26 Tul.L.Rev. 446; Wilcox, Civil Law CommentsThe Marital Status of Property Purchased with Separate Funds, 9 Tul.L.Rev. 107, 115.
"Another reason for the distinction stems from the relative positions of the wife and husband in the administration of the community. Inasmuch as the husband is *1147 given extensive powers of control over the community, the wife in turn must have counter-balancing protections. One such protection is the `double declaration' by the husband in order that there is reliable evidence of his intention at the time of the purchase. If the husband did not have to make it clear at the time of purchase that the property acquired was his separately, but could do so at a later date, it might well happen that the husband would leave this declaration to a subsequent time, when the value of the investment was determined. For example: If the property diminished in value, or a debt on it fell due, the husband could claim it was community property and therfore the community would be liable. He could further materially injure the wife's rights in the community assets if the property increased in value. Sharp v. Zeller, supra; Metcalf v. Clark, 8 La.Ann. 286 (1853); Bass v. Larche, 7 La.Ann. 104 (1852); dissent in Hollier v. Fontenot [216 So.2d 842 (La.App.)], supra; Huie at 26 Tul.L.Rev. 446, Wilcox at 9 Tul.L.Rev. 116."
This court in Phillips, supra, while declining to hold the double declaration requirement unconstitutional as violative of equal protection,[3] pointed out that the historically relied-upon bases had no true rational justifications.
The jurisprudence has stated that the double declaration is essential to put third parties who rely on the public records on notice that the immovable property being acquired may not be community property, and thus alert third parties to investigate further the actual existing facts. However, under former La.Civ.Code art. 2334, the husband can lease, mortgage, or sell community property without the wife's consent, unless it stands in both their names or has been declared to be the family home. Thus, the paramount question to third parties is not whether the property is separate or community, but rather whose signature(s) must appear on a conveyance. The presence of a double declaration does not aid in determining who will sign, since the presence thereof does not benefit the husband with a conclusive presumption that the property is his separately. Thus, even if a double declaration appears, the third party must still determine whether the property is nonetheless community and if so, whether the wife is required to sign a conveyance. Unless prohibited by former La.Civ.Code 2334, the husband of his own volition may alienate community property, regardless of the absence of a double declaration in the act of acquisition. Thus, the double declaration requirement does little, if anything, to aid third parties who rely on the public records.
Another stated basis for the requirement involves the apparent concern of the courts that since the husband as head and master of the community has such extensive powers, he can acquire immovable properties with his separate funds and subsequently pick the better investments to fall into his separate estate. It is argued that the double declaration rule prevents this practice.
This approach, however, again assumes that the presence of a double declaration presumes the property separate without further proof, which is simply not so. If the husband cannot demonstrate by a preponderance of the evidence that his separate assets or funds were expended in acquiring the property, the property is community, and the double declaration does not avail him. If he is able to meet such a burden of proof, he should prevail regardless of the presence (or lack thereof) of the double declaration, since under the Revised Civil Code, property acquired with his separate funds should be owned by him separately, former La.Civ.Code art. 2334. In such a case, the only asset the community (and the wife) "loses" is that which in reality it was never entitled to receive. Additionally, even if the husband subsequently claims property as his separately, the community still obtains all fruits which the property has produced during the marriage; *1148 see former La.Civ.Code art. 2402, see also Milling v. Collector of Revenue, 220 La. 773, 57 So.2d 679 (1952). Thus, even without the double declaration rule, the wife's only true loss caused by her husband's later declaring successful investments as his separate property is that of her expectation that such investments were part of the community.
As do many judicially-created rules, the double declaration rule creates pitfalls which may outweigh its dubious advantages. If the double declaration is required, a wily husband may abuse his administrative powers by intentionally omitting it. The property is then presumed community conclusively. The husband then may squander, waste or abuse the property and later, by demonstrating that his separate funds were expended in its acquisition, charge the community for the full reimbursement of the purchase price, since the expenditure of his separate funds have enriched the community. The wife's only recourse is to renounce the community (upon dissolution) or move the court for a separation of property, former La.Civ.Code arts. 2410 and 2425.
A husband can also "dump" bad investments onto the community even if a double declaration is present, since there is no presumption in his favor created thereby. Property acquired during marriage is presumed community even when a double declaration is present, and if the husband declines to adduce evidence which proves its separate status, the community prevails. In such an instance, it would be incumbent on the wife to prove that the property was the husband's separately, a result which seems anomalous.
The double declaration requirement and its corollary, that the husband can nonetheless recover the amount of his separate funds expended in acquiring property conclusively presumed community, has at times produced freakish results in controversies. In Schoeffner v. Schoeffner, 163 La. 142, 111 So. 655 (1927), the husband acquired immovable property by a deed which recited a cash consideration. It was undisputed at trial that the actual consideration therefor was the settlement of a dispute between the husband and his brother-in-law over his sister's succession, and no cash ever exchanged hands. The Supreme Court noted in the act a cash consideration and the absence of the double declaration, and found the property was conclusively presumed community. However, the court allowed the husband to recover $3400, the amount of cash recited in the act as the purchase price, even though this amount was never expended by the husband and was a fictitious sum only. Perhaps the court was merely utilizing the recited price as a measure of the value of property which the husband lost to the community. However, to award the husband in "reimbursement" an amount which he admittedly never expended seems curious indeed. If Schoeffner were followed in the case sub judice (as is urged by Mrs. Wood), Karl D. Wood would receive as reimbursement a mere pittance of the value of properties conclusively presumed community, since the record leaves little doubt that the "prices" listed in the acts of sale are by no means serious.
As was noted above, the double declaration requirement is not mentioned in the Revised Civil Code, but is a creature of the judiciary. At the time of the transfers involved herein, neither La.Civ.Code art. 2334 nor art. 2402 literally required a double declaration. As was observed by Justice Dennis in Loyacano v. Loyacano, 358 So.2d 304, 308 (La.1978); vacated and remanded in 440 U.S. 952, 99 S.Ct. 1488, 59 L.Ed.2d 766; overruled on other grounds, Lovell v. Lovell, 378 So.2d 418, 421 (La.1979):
"... civilian judges are not required to depend merely upon a logical analysis of the existing statutes, but may employ other recognized methods of interpretation. They may perform extensive exegesis to discover the original legislative intent; legislative texts may be interpreted so as to give them an application that is consistent with the contemporary conditions they are called upon to regulate; and a particular conflict of interests before the court may be resolved in accordance with the general policy considerations *1149 which induced legislative action rather than by reliance on logical deductions from the language of the text. Both the codal and the doctrinal principles should be employed to discover the meaning of the words of the law." (emphasis supplied by this court)
See also the comments of Justice Dennis in Ardoin v. Hartford Accident and Indemnity Co., 360 So.2d 1331 (La.1978), to the effect that case law is invaluable in interpreting the Civil Code, but is not the primary source of the law of Louisiana, which rests upon the written expressions of the legislature and other legislative and administrative bodies.
In the instant case, the record taken as a whole demonstrates no reproachable designs on the part of Karl D. Wood to deprive his wife of her share in the community. The record indicates that the only reason cash considerations were mentioned in the acts of acquisition is that the properties involved were formerly a part of the community existing between Mr. Wood's parents, and since Mr. Wood's mother divested herself also of her interest in the properties, a recitation of cash consideration was included in the hope of avoiding collation problems in the future which might be created by donations to Mr. Wood by his mother.
Inasmuch as the acts involved herein indicate a cash consideration, a knee-jerk adherence to the double declaration rule would require us to find that the properties involved herein fell into the community between Mr. and Mrs. Wood. However, since we are of the opinion that the historical underpinnings behind the rule are without validity, we decline to follow this jurisprudential rule. Strict application of the double declaration rule to the facts before us would lead to a manifest injustice. This, as a court of law and justice, we cannot allow. We therefore shall not allow the absence of a double declaration in the notarial acts in question to preclude us from examining the actual circumstances behind the acquisition of the properties involved herein.
The record in the trial court makes clear the fact that all of the properties involved were acquired by Mr. Wood in a partitioning agreement between himself, his mother, his uncle, and his co-heirs. The acts in question reflect an attempt to partition a succession rather than effect sales of parts thereof. No cash exchanged hands in the transaction. Because the subject property was obtained totally through inheritance and donations to Karl D. Wood particularly by his mother and his uncle, the parcels are the separate property of Karl D. Wood, former La.Civ.Code art. 2334. The trial court did not err in so holding.
Buttressing our position is the fact that the acts in question contained provisions which state that the interests in immovable property being conveyed were those which devolved both to the vendors and vendee through the succession of Mr. Wood's father. These provisions, along with the fact that the prices recited were so small as not to seem serious, would arguably alert third parties that a partition among heirs was intended rather than a true sale. See Ortego v. Morein, 212 La. 774, 33 So.2d 516 (1947). Partitions made to settle a succession have not been required to contain a double declaration as a prerequisite to the husband's proving the separate nature of the property acquired therein. See Troxler v. Colley, 33 La.Ann. 425 (1881); Succession of Miangolarra, 297 So.2d 784 (La.App. 4th Cir.1974); writ ref. 302 So.2d 15 (La.1974); McElwee v. McElwee, 255 So.2d 883 (La. App. 2nd Cir.1971); writ ref. 260 La. 861, 257 So.2d 434 (1972).
Even had we felt constrained to follow the double declaration rule, the result herein would not have been changed, inasmuch as we are of the opinion that La.Civ. Code art. 2340 (enacted by Acts 1979, No. 709), which eliminates the double declaration requirement, can and should be applied retroactively. La.Civ.Code art. 2340 reads:
"Things in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either spouse may prove that they are separate property." (emphasis ours)
*1150 Title VI of Book III of the Revised Civil Code was initially repealed by Acts 1978, No. 627, § 6. This Act added La.R.S. 9:2831 through La.R.S. 9:2856 to the Revised Statutes. La.R.S. 9:2838 contained a paragraph with language almost identical to that recited above in La.Civ.Code art. 2340, eliminating the double declaration requirement.
Section Nine of Act 627 of 1978 stated that the statutes therein enacted would take effect January 1, 1980, and would apply to the property and obligations of all spouses, regardless of when the spouses were married or the property acquired (or obligations incurred). However, Section Nine also provided that the new provisions concerning the legal regime (including R.S. 9:2838) could not be construed so as to change the characterization as separate or community of assets acquired prior to the effective date, nor to invalidate any act or transaction made prior to the effective date by a spouse who relied on the law in force at the time of the transaction. Thus, while the new regimes laws enacted in Act 627 of 1978 were expressly made retroactive in general, no provision of the new legal regime could apply retroactively to change the classification of property as separate or community.
In "The Retroactivity Provisions of Louisiana's Equal Management Law: Interpretation and Constitutionality," 39 La.L.Rev. 347 at 398-400 (Winter 1979), Professor Cynthia Samuel commented on the possible retroactive application of the 1978 statute which eliminated the husband's double declaration requirement. Professor Samuel observed that if the double declaration rule was considered simply as an evidentiary presumption governing proof in certain cases, then the elimination thereof could be applied retroactively, since there could be no constitutional objection to applying a civil rule of evidence retroactively. However, Professor Samuel noted that the Louisiana jurisprudence has held that the absence of the double declaration creates an irrebuttable, conclusive presumption. Thus, Professor Samuel reasoned, the double declaration requirement is not truly an evidentiary presumption but is instead a rule of classification. As such, the statute eliminating the double declaration could not be applied retroactively because of the prohibition in Section Nine and because of constitutional due process considerations.
Acts 1979, No. 709 repealed Acts 1978, No. 627 in its entirety and enacted a new Title VI of Book III of the Revised Civil Code, entitled "Matrimonial Regimes," including La.Civ.Code art. 2340 as recited above. Section Thirteen of Act 709 again provided January 1, 1980 as the effective date of the new matrimonial regimes code articles; however, unlike Section Nine of Acts 1978, No. 627, no provision was made for the retroactivity of the new laws. Thus, the legislation itself does not prevent a retroactive application of the elimination of the double declaration requirement, as was the situation with the 1978 legislation.
As a general rule in Louisiana, a law can prescribe only for the future, La.Civ.Code art. 8. However, under the interpretation of this code article by the Supreme Court, laws which are not substantive but are merely procedural or remedial will be given retroactive effect in the absence of language showing a contrary intention, Ardoin, supra at 1339.
Traditionally, conclusive presumptions have been considered rules of substantive law rather than rules of evidence, 31A C.J.S., Verbo "Evidence," § 115. It could be argued that since La.Civ.Code art. 2340 abrogates an irrebuttable presumption which is a substantive rule of law, then La.Civ.Code art. 2340 is substantive as well. It could also be argued that La.Civ.Code art. 2340 is substantive because the husband is allowed to adduce proof of the separate nature of property acquired during marriage regardless of what recitations appear in the act of acquisition, which right has been denied to husbands in the past.
We would find neither contention convincing. The ability of the husband to adduce proof of separateness in the absence of a double declaration was not denied by the legislature, but by the judiciary. Yet, in *1151 Louisiana, the law is the solemn expression of the legislative will, La.Civ.Code art. 1. The judicial branch of government merely interprets such expressions of legislative will. The decisions of state courts in Louisiana do not create or eliminate substantive rights, since this is the proper function of the legislature. Thus, the jurisprudentially-created double declaration rule could not have affected any substantive right of the husband, nor does the legislative abrogation of the rule restore to the husband any substantive right.
What La.Civ.Code art. 2340 actually does is establish a presumption in favor of the community which can be rebutted by either spouse. As a rebuttable presumption, the article is procedural in nature and can be applied retroactively, Ardoin, supra.[4]
We are also of the opinion that such retroactive application of La.Civ.Code art. 2340 would not operate to divest a wife of a vested right. We reiterate that the pronouncements of state courts are not law in Louisiana, La.Civ.Code art. 1. Thus, the double declaration requirement imposed by the judiciary did not create any substantive right in favor of the wife. A wife cannot claim that her reliance on prior jurisprudence vested any substantive right in her favor because no vested rights are created by the jurisprudence emanating from our state courts, see Pfister v. St. Bernard Cypress Co., Limited, 155 La. 575, 99 So. 454 (1923); cert. den. 266 U.S. 625, 45 S.Ct. 125, 69 L.Ed. 474.
Like former La.Civ.Code art. 2334, present La.Civ.Code art. 2341[5] states that property acquired by a spouse by inheritance or by donation to him individually is separate property. Thus, under the facts and circumstances of this case, the pertinent parts of La.Civ.Code art. 2341 could also be applied retroactively, since to do so would not effect any change in the substantive law. The result is the same: the properties in question were obtained by Karl D. Wood through inheritance and donations to him particularly, and are therefore the separate property of Mr. Wood, under La.Civ. Code art. 2341. The record compels such a conclusion.

PAROL EVIDENCE RULE
Mrs. Wood also argues that because the conveyances in question were in the form of authentic acts, Karl D. Wood cannot introduce parol evidence to controvert recitations therein. However, this court in Broadway v. Broadway, 417 So.2d 1272 (La.App. 1st Cir.1982), in interpreting La.Civ.Code arts. 2236, 2238, and 2276, held that the parol evidence rule does not apply where the controversy is between those parties to the act of sale who were on the same side and whose interest was identical. See also Richard v. Cain, 168 La. 608, 122 So. 866 (1929). Thus, even if Mrs. Wood were considered a privy to the act because of her marital relationship to Karl D. Wood, she cannot invoke the parol evidence rule against her husband because they are on the same side of the act and their interest in the act was identical. Additionally, the parol evidence rule does not apply when the writing is collateral to the issue involved and the action is not based on the writing, as is the situation here. See Wampler v. Wampler, 239 La. 315, 118 So.2d 423 (1960).

*1152 PARTITION
Inasmuch as we find that the only parcel involved herein which falls into the community is the family homestead of the parties, we agree with the trial judge that it is not divisible in kind.

DECREE
Therefore, for the above and foregoing reasons, the judgment of the trial court in favor of defendant-appellee, Karl D. Wood, is hereby affirmed in all respects. All costs of this appeal are assessed to plaintiff-appellant, Lyndall Sharp Wood.
AFFIRMED.
NOTES
[1] Title VI of Book III of the Louisiana Civil Code of 1970, which contained articles 2325 to 2437, was repealed by Acts 1978, No. 627, § 6. Acts 1979, No. 709, § 1 also repealed Title VI of Book III, effective January 1, 1980, and enacted a new Title VI, consisting of articles 2325 to 2376 under the heading "Matrimonial Regimes."
[2] Former Article 2334 reads:

"The property of married persons is divided into separate and common property.
"Separate property is that which either party brings into the marriage, or acquires during the marriage with separate funds, or by inheritance, or by donation made to him or her particularly. The earnings of the wife when living separate and apart from her husband although not separated by judgment of court, her earnings when carrying on a business, trade, occupation or industry separate from her husband, actions for damages resulting from offenses and quasi offenses and the property purchased with all funds thus derived, are her separate property.
"Actions for damages resulting from offenses and quasi offenses suffered by the husband, living separate and apart from his wife, by reason of fault on her part, sufficient for separation or divorce shall be his separate property.
"Common property is that which is acquired by the husband and wife during marriage, in any manner different from that above declared. But when the title to community property stands in the name of the wife, it cannot be leased, mortgaged or sold by the husband without the wife's written authority or consent.
"Where the title to immovable property stands in the names of both the husband and wife, it may not be leased, mortgaged or sold by the husband without the wife's written authority or consent.
"Where the title to community immovable property declared to be the family home stands in the name of the husband alone it may not be leased, mortgaged or sold without the wife's written authority or consent.
"The limitation on the husband described in the two immediately preceding paragraphs shall not apply where the wife has made a declaration by authentic act that her authority or consent are not required for such lease, sale or mortgage and has filed such declaration in the mortgage and conveyance records of the parish in which the property is situated.
"The declaration may be general as to all such property or it may specify property to which it shall or shall not apply. If the declaration so provides, it may apply generally to property which may be acquired in the future, but a contrary declaration of withdrawal of her authority or consent by the wife may be made and recorded."
Former Article 2402 reads:
"This partnership or community consists of the profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, of the produce of the reciprocal industry and labor of both husband and wife, and of the estate which they may acquire during the marriage, either by donations made jointly to them both, or by purchase, or in any other similar way, even although the purchase be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase. But damages resulting from personal injuries to the wife shall not form part of this community, but shall always be and remain the separate property of the wife and recoverable by herself alone; `provided where the injuries sustained by the wife result in her death, the right to recover damages shall be as now provided for by existing laws.'"
[3] The constitutionality vel non of the double declaration requirement has not been made an issue herein, and is therefore not before the court at this time.
[4] Certainly there is reason for so doing. It would offend uniformity of the law to require a different standard of proof for property acquired prior to 1980 vis-a-vis property acquired after January 1, 1980.
[5] Present article 2341 reads:

"The separate property of a spouse is his exclusively. It comprises: property acquired by a spouse prior to the establishment of a community property regime; property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used; property acquired by a spouse by inheritance or donation to him individually; damages awarded to a spouse in an action for breach of contract against the other spouse or for the loss sustained as a result of fraud or bad faith in the management of community property by the other spouse; damages or other indemnity awarded to a spouse in connection with the management of his separate property; and things acquired by a spouse as a result of a voluntary partition of the community during the existence of a community property regime."